## TERRITORY OF HAWAII *v.* TRIBORCIO YADAO.

### No. 2349.

ARGUED JULY 24, 1939.                    DECIDED SEPTEMBER 11, 1939.

COKE, C. J., PETERS, J., AND CIRCUIT JUDGE BROOKS
IN PLACE OF KEMP, J., DISQUALIFIED.

OPINION OF THE COURT BY COKE, C. J.

This is a prosecution for assault and battery with a weapon obviously and imminently dangerous to life. The defendant was convicted and the case is here upon his exceptions.

But two exceptions need be considered, *i.e.,* the exception of the defendant to the refusal of the trial court to permit him to show upon the cross-examination of the prosecuting witness the meaning and implication of a "fencing sign" preceding the use of the club with which the latter was armed, appearing as exception number four in the bill of exceptions, and appellant's exception number seven. A brief statement of the facts will render the errors apparent.

The defendant was a laborer on the Kilauea sugar

plantation on the Island of Kauai. On the day of the alleged assault and after having finished his day's labor as he was proceeding homeward along the public road he was met by the prosecuting witness with whom he had slight, if any, prior acquaintance. According to the story related by the prosecuting witness, he spoke first and demanded that the defendant disclose his identity. Defendant rejoined by a similar demand and from this trivial circumstance they parted in an angry mood. The prosecuting witness proceeded to his home which was adjacent to the road leading to the defendant's residence. After the prosecuting witness reached his house he claims that the defendant called to him from the road, saying: "If you are a man you will come down from your house." The defendant related the occurrences very much at variance with the story told by the prosecuting witness. But regardless of what previously happened, there is no doubt that after going to his home the prosecuting witness armed himself with a piece of wood about two and one-half feet in length and one and one-eighth inches in thickness and went forth upon the road in a belligerent and aggressive frame of mind in quest of the defendant and after reaching a point within striking distance of the defendant made a threatening gesture toward him with the stick or club which the prosecuting witness characterized as a "fencing sign" and then suddenly hurled a quantity of dirt or sand directly into the face of the defendant which temporarily blinded him. The defendant being thus assaulted and incapacitated fired a revolver in the direction of the prosecuting witness inflicting a superficial wound.

The prosecuting witness, as a witness for the Territory, upon direct examination admitted having armed himself with the club referred to. What use he made of his club, however, was not brought out upon direct examination. Upon cross-examination the witness was pressed by the de-

fendant's counsel for details and it was in respect to this testimony upon the subject of the "fencing sign" that the error occurred. The quotation in the margin gives the proceedings in full.[1]

It is apparent from the course taken in the examination of the prosecuting witness that the defense was endeavoring to elicit from the prosecuting witness the meaning or implication of the "fencing sign" which immediately preceded the assault by the prosecuting witness upon the defendant for the purpose of showing that the "fencing sign" did not lessen the apprehension of danger which would be reasonably excited by the use, by the prosecuting witness, of the club with which he was armed. The cross-examination of the prosecuting witness in that regard was first impersonal; later it became personal. But whether

---

[1] "Q. Mr. Pecunla, you said you came out with this stick in your hand,—did you make any sign with this stick? A. (Witness demonstrates) That is the way I hold the stick. Q. Does that particular sign mean anything? MR. KAULUKOU: I object to the question as calling for an opinion of the witness. 'Does that particular sign mean anything?' Suffice it for this witness to demonstrate what he did with the stick and leave it for the jury to answer. THE COURT: The objection is sustained. The man may be asked what he meant by it. MR. ACHI: Q. Is that a fencing sign, Pedro? A. I saw some people when they make fencing that is what they make. Q. So you intended that to make a fencing sign, is that correct? A. Yes. Q. Then that is a sign, as you say? Does that sign mean that one is only to hit from the top of the head to the belt? A. No, it depends on what part of the body is to be touched. Q. But that particular sign, by that particular sign, one is not to touch any part of the body below the belt? A. No, it depends on what part of the body you can touch. Q. That you can touch? A. Yes, it depends. Q. How many signs, then, would one have if he were to use the fencing sign to touch any particular part of the body? A. Only that it depends on what part of the body you touch. Q. That you can touch, is that it? A. It depends on what part of the body you touch. Q. Then I take it the sign that you just gave us is the sign that one could touch any part of the body at any time. A. It depends what you touch. Q. Then the sign that you gave meant that you could touch his head, if you could

personal or impersonal, the questions were not calculated to elicit the personal, undisclosed intentions of the prosecuting witness in the use of the stick but to show the meaning intended to be conveyed by the use of the fencing sign which preceded the use of the club. The personal form of questions was but another method pursued by counsel for the defendant to secure an explanation of the meaning that the fencing sign conveyed and whether that meaning, assuming that the defendant was acquainted with its meaning, was inconsistent with the intentions which the use of the club by the prosecuting witness reasonably implied. Obviously if the fencing sign employed indicated to one familiar with its meaning that an assault was not imminent, there would be no apparent danger from the use of the club. On the other hand, if the fencing sign indicated to one to whom its meaning was known that an assault was imminent, the fencing sign was consistent with an assault and the usual and ordinary inferences that arise from the use of a club attach.

The defendant in the exercise of his right of self-

---

touch it? A. Well, if it happened to hit the head, it is the head. Q. And then you intended, did you not, to hit the head if you could hit him on the head? MR. KAULUKOU: I object, as calling for opinion of the witness and conclusion. The Jury is entitled to get a thorough picture, statements and demonstrations, but not, if the Court please, to the conclusion of this witness, and this calls for conclusion, whether he intended to hit him on the head. MR. ACHI: I was going to ask this witness if he intended to hit him on the head if he could hit him on the head. It is the only way that shows if he intended to hit him on the head, and is the way as to what part of the body he could touch him. MR. KAULUKOU: It is not part of the evidence and the witness is put under a conclusion, if the Court please, and this calls for a conclusion of the witness: 'Did you intend to hit him on the head?' (Further argument) THE COURT: The objection will be sustained. MR. ACHI: We note an exception. THE COURT: Exception will be noted."

defense was not limited to the absolute necessity of the occasion but only by what reasonably appeared to him to be dangerous at the time, viewed from his standpoint. (5 C. J., tit. Assault and Battery § 235, p. 747.) And he was entitled to act on the apparent danger as it reasonably appeared to him at the time. (*ibid.*) It was material to the issue of self-defense whether the defendant was entitled to act on the apparent danger as it reasonably appeared to him at the time from the use of a club by the prosecuting witness under the circumstances described or whether, due to the accompanying fencing sign, there was no occasion for apprehension. For these reasons defendant's exception number four must be sustained.

After Pedro Pecunla had testified at the trial Joseph Huddy, deputy sheriff of the county of Kauai, who had investigated the alleged crime on behalf of the government, was called to the witness stand by the prosecution and having concluded his testimony upon direct examination was asked by counsel for defendant whether or not Pecunla had made complaint of the alleged crime to him, the purpose of course being to show hostility and bias on the part of Pecunla against the defendant in order to weaken the credibility of the former. Upon objection of counsel for prosecution the trial court excluded the evidence upon the ground that it was immaterial. This ruling is the basis of defendant's exception number seven. The general rule is that a witness may be impeached by showing his bias, hostility or prejudice and this may be done by his own testimony *or by other evidence*. (28 R. C. L. 615.) The defendant had the right to show, if he could, as affecting the credibility of the testimony given by Pecunla, that the latter was the complainant in the case and was thus hostile and biased. Here again the trial court unreasonably restricted defendant's right of cross-examination to the prejudice of the latter.

The extent of cross-examination is largely within the control of the trial court. But where, as here, cross-examination is unduly limited as a result of which the defendant is deprived of a fair trial this court has no alternative but to set aside the verdict and require the prosecution to begin anew.

Accordingly the exceptions considered are sustained and the cause remanded for further proceedings consistent with this opinion.

*T. M. Waddoups* (*W. B. Lymer* and *W. C. Achi* on the briefs) for defendant.

*A. G. Kaulukou,* County Attorney of Kauai (also on the brief), for the Territory.