*In re* ROBERTS PARK FIRE PROTECTION DISTRICT, Petitioner—(ROBERTS PARK FIRE PROTECTION DISTRICT, Petitioner-Appellant, *v.* THE VILLAGE OF BRIDGEVIEW, Respondent-Appellee.)

(No. 58859;)

First District (1st Division)—May 6, 1974.

*Rehearing denied June 26, 1974.*

Irving Goodman and Smietanka & Garrigan, both of Chicago, for appellant.

Ancel, Glink, Diamond & Murphy, P. C., of Chicago (Marvin J. Glink and Barry S. Shanoff, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

The Roberts Park Fire Protection District is a municipal corporation operating in the area southwest of the city of Chicago. A number of villages are included within the District. The litigation before us commenced with the filing of a petition by the District in which it sought to prevent a disconnection from its territory of a certain area located within the Village of Bridgeview. (See Ill. Rev. Stat. 1973, ch. 127½, par. 38.3.) The amended petition filed by the District and answered by the Village alleged in substance that the boundaries of the District included parts of the Villages of Bridgeview and Justice; Bridgeview maintained a total volunteer fire department prior to 1970 and Justice continued to maintain a total volunteer fire department; the disconnection of the lands involved would impair the ability of the District to render fully adequate fire protection service to the balance of the District and that such disconnection made no adequate provision for the protection of contractual obligations and debts of the District. These allegations of the petition were denied by the Village.

After a hearing, without a jury, the trial court found that the disconnection of that portion of the District located within the Village would not impair the ability of the District to render fully adequate fire protection to territory remaining in the District and that the statute providing for the disconnection was not contrary to any of the provisions of the

constitutions of the United States and of the state of Illinois. The court, therefore, ordered that the petition of the District, seeking to avoid the disconnection, be dismissed. The District appeals. The Village of Justice has withdrawn its objection to the petition and remains within the District.

The evidence shows that the District is bounded by Harlem Avenue on the east, 79th Street on the north and 95th Street on the south. The western boundary of the District is irregular. That portion of the District which lies within the Village comprises 30% or 35% of the total area of the District. Approximately 24.5% of the total revenue of the District results from taxes on real estate within the Village limits. There is evidence that outside of the Village area the District consists mostly of residential uses with a few small and scattered commercial uses. A professional fire fighter testified that the most significant fire hazard in this area of the District was a complex of apartment buildings up to four stories in height. That part of the Village which is located within the District has some residential uses and also some industrial and mercantile establishments. The Village fire department has 19 full-time members who service the area in shifts during each 24-hour period. The department also has 35 volunteer firemen who are paid on call, together with three full-time personnel occupied in fire prevention activities. There is testimony that the Village has equipment of the type necessary to handle industrial fires.

The District has a fire chief who is an experienced professional. It has a permanent full-time crew of four professional firemen and 35 volunteer firemen. The parties filed a written stipulation which showed the vehicles and apparatus owned and operated by the District and which also stated that "heretofore both the Village of Bridgeview and the Roberts Park Fire Protection District have rendered fully adequate fire protection service to the territory within their respective corporate limits."

It is undisputed that disconnection of the Village territory within the District would reduce actual tax revenue of the District by about 24.5%. The stipulation between the parties also reflected the total assessed value of all real property within the District and within that portion of the District inside of the Village; the total tax rate; and totals of taxes extended and taxes actually received by the District for the tax years 1968-1971 inclusive. This information is reflected as follows:

| | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|
| Assessed value of all District property | $41,937,846 | $51,836,860 | $61,418,325 | $70,507,052 |
| Tax Rate | 0.10 | 0.098 | 0.278 | 0.256 |

Assessed value of
District property
within Village

| | | | |
|---|---|---|---|
| within Village 8,361,051 | 10,872,236 | 14,606,328 | 17,093,585 |
| Taxes extended 41,938 | 50,800 | 170,743 | 180,498 |

Taxes received by
District 38,454 45,133 168,841 —

The record also shows that, for the year 1972, the fire department of the District responded to a total of 816 alarms. A total of 180 of these incidents occurred within the limits of the Village, meaning that 636 alarms were handled relating to property outside of the Village but within the District. Calculation shows that for the year 1972 approximately 22% of all of the emergency calls answered by the District fire department originated from property within the limits of the Village. A summary of the additional testimony is also required.

Robert Rasch, fire chief of the District since 1965, was questioned directly relative to the central issue in the case: namely, would the elimination of the Village area from the District and resulting loss of revenue "impair the ability of the District to render fully adequate fire protection service to the territory remaining with the District"? ( Ill. Rev. Stat. 1973, ch. 127½, par. 38.3.) An objection to this question by counsel for the District was properly overruled by the court. The witness expressed the opinion that this revenue loss would impair the ability of the District to maintain "fully adequate" fire protection.

Karl Biallas, treasurer and trustee for the District, testified that a disconnection of the Village would affect the ability of the District to pay various expenses which the witness characterized, perhaps erroneously, as "fixed charges." The witness further expressed the opinion that loss of tax revenue resulting from withdrawal of the Village would prevent the District from giving fully adequate fire protection. A good part of the cross-examination of this witness was directed to details in the financial statements of the District. This questioning disclosed that the witness was not a prime expert on municipal accounting. However, he had a good grasp of the financial problems involved in the day-to-day operation of the District. He testified further that the District had not considered the issuance of general obligation bonds. He also testified that, during the 1971-1972 fiscal year, the District had made all payments required in connection with certain equipment. The total amount of these items exceeded $50,000.

The final witness for petitioner was Emil Valovic. He is a fire protection consultant with experience in fire prevention although he is not a professional engineer. He studied and analyzed the operation of the

District and was familiar with its need of equipment and manpower for continuation of adequate fire prevention. He studied the financial operation of the District and examined the area physically on two occasions. He did not testify directly as to the ultimate issues before the court. As a result of his survey he determined the equipment requirements and needs of the District to adequately service its entire territory. In his opinion, the District should expand its department to 20 full-time men and should purchase at least four additional pieces of equipment referred to as "pumpers." These items would each represent a cost of some $42,000 to $50,000. These conclusions were based upon his analysis of the entire District including the portions thereof within the boundaries of the Village.

The first witness for respondent was Robert F. Murray, an experienced and qualified professional fire fighter who is full-time fire chief for the Village. He testified relative to the personnel and the equipment of the Village fire department as above shown. He also gave a general characterization of the nature of the land uses within that part of the Village located in the District and the balance of the District. This witness did not testify as to the ultimate question before the court. However, he did testify that, in his opinion, four full-time firemen, together with a number of volunteers would provide adequate protection to an area which was primarily residential. This opinion, however, was predicated upon the use of a well-trained and responsive force of volunteers.

The respondent also called Edward Benjamin who has had long experience in municipal financing including the sale of municipal bonds of all types. He examined and evaluated the pertinent financial figures and data pertaining to the operation of the District. In his opinion, the area of the District which would remain in event of disconnection of the Village would not be financially impaired in its activities, but it could "sustain its operation on a financially continuing basis." In other words, in his opinion, the loss of taxable real estate which the District would sustain by disconnection of the Village would not, from a financial point of view, render the District incapable of continuing to provide adequate fire protection.

Cross-examination of this witness showed that he did not make a personal survey of the District. He predicated his opinion upon the supposition that the balance of the District remaining after disconnection would have an assessed valuation of real estate of approximately $58,000,000 to $60,000,000 subject to taxes. This, in turn, was predicated upon the assumption that the growth in assessed valuation for the past several years would continue. He also stated that he was not qualified to answer a direct question as to whether disconnection of the Village

area from the District would do anything to impair fully adequate fire protection service to the balance of the District remaining. Upon questioning by the court, the witness·expressed the opinion that the portions of the District remaining after disconnection would have sufficient tax receipts to enable them to "operate and maintain their district and to retire debts."

The final witness for respondent was Boyd Hartley, an associate professor in the Department of Fire Protection and Safety Engineering of Illinois Institute of Technology. This qualified person testified that he had visited the District and toured and studied it on two occasions. He did not express any direct opinion as to the ultimate question. He did testify that the equipment which the District presently has "is more than would be necessary to give adequate protection to the area remaining" after disconnection. However, on cross-examination, this witness conceded that he had never examined the equipment or the fire station beyond passing by the station itself. Also, he did not consult with the fire chief of the District because he did not believe that this was necessary for his information. In his opinion, "six paid men on each piece of apparatus" would be fully adequate to provide fire protection. The witness expressed the opinion that the words "fully adequate" were entirely a subjective term and that it would be the responsibility of the officials of the District "to determine what in their opinion is fully adequate for their community." He testified that, in his opinion, no American community has "fully adequate fire protection." However, he stood by his opinion that the equipment which the District presently operates is "fully adequate."

Discussion of the issues must commence with examination of the applicable statute. The legislature has provided that territory within a fire protection district, which becomes a part of a city or village, is to be disconnected from the district by operation of law. However, this will not occur if the district files a petition "with the appropriate court" alleging "* * * that the loss of assessed valuation by reason of such disconnection will impair the ability of the district to render fully adequate fire protection service to the territory remaining with the district." The district has the burden of proof of this allegation. If there are "general obligation bonds" of the district outstanding and unpaid at the time of disconnection, the disconnected portion will remain liable for its proportionate share thereof. See Ill. Rev. Stat. 1973, ch. 127½, par. 38.3.

■■ Consequently, the prime issue is whether the "loss of assessed valuation" to the District by reason of disconnection of the Village territory "will impair the ability of the district to render fully adequate fire protection service to the territory remaining with the district." The task

here is interpretation and application of this language. It is our primary duty "to ascertain and give effect to the true intent and meaning of the legislature." (*People ex rel. Hanrahan v. White*, 52 Ill.2d 70, 73, 285 N.E.2d 129.) In this connection, we cannot eliminate from our thinking any portion of the statute. We must give due consideration and reasonable meaning to "each word, clause or sentence" used by the legislature. (*Hirschfield v. Barrett*, 40 Ill.2d 224, 230, 239 N.E.2d 831.) In application of the statute, we are duty bound "to promote its essential purpose." *Stubblefield v. City of Chicago*, 48 Ill.2d 267, 271, 269 N.E.2d 504.

We must note at the outset that, in other portions of the statute bearing upon the creation of fire protection districts, the legislature has used different language. It has stated its policy to create such districts for the purpose of providing "as nearly adequate protection from fire for lives and property within the districts as possible." (Ill. Rev. Stat. 1973, ch. 127½, par. 21.) The legislature has used the same language in placing upon the trustees of any incorporated fire district the "legal duty and obligation to provide as nearly adequate protection from fire for all persons and property within the said district as possible." (Ill. Rev. Stat. 1973, ch. 127½, par. 31.) It is most remarkable that, in the particular portion of the statute here involved, the legislature has declared that there may not be a disconnection from a fire district which will impair its ability "to render fully adequate fire protection service to the territory remaining with the district." We cannot disregard or make light of the word "fully." One of its close synonyms is "completely." The use of this particular language by the legislature, contrasting with the language in other portions of the statute, must be given full weight and meaning. Protection of human life and property from destruction and devastation by fire is a prime governmental function of foremost importance. The disconnection of territory from a district may not be permitted if it will result in any impairment of the ability of the district to maintain the expressed high standard of "fully adequate" fire protection. Even the slightest impairment of this standard should not be permitted. No criterion other than completeness can be accepted.

■■■ The evidence must be analyzed within the framework of the high and exacting demands thus imposed by the legislature. In a situation of this type, it was necessary for the court to hear the opinion of experts. Matters of fire prevention are generally beyond the knowledge or understanding of the average person and they are exceedingly difficult of comprehension and explanation. It was proper for counsel for both parties to elicit the opinion of expert witnesses regarding the ultimate question before the court. (*Miller v. Pillsbury Co.*, 33 Ill.2d 514, 516,

211 N.E.2d 733, cited in *Moren v. Samuel M. Langston Co.*, 96 Ill.App.2d 133, 142, 237 N.E.2d 759.) Despite early precedents to the contrary, the reviewing courts of Illinois have approved the practice of permitting the expert to express directly his opinion upon ultimate issues on the theory that "since the trier of fact is not required to accept the opinion of the expert, such evidence does not usurp the province of the jury." (*Merchants National Bank v. E. J. & E. Ry. Co.*, 49 Ill.2d 118, 122, 273 N.E.2d 809.) See also *Coleman v. Illinois Central R.R. Co.*, 13 Ill.App.3d 442, 444, 300 N.E.2d 297, involving an expert opinion on adequacy of protection at a railroad crossing as does *Merchants National Bank;* also *Kobrand Corp. v. Foremost Sales Promotions, Inc.*, 8 Ill.App.3d 418, 421, 291 N.E.2d 61, concerning the opinion of an expert regarding competition in the sale of intoxicating liquor.

In the case before us, the District presented the testimony of its fire chief, Robert Rasch, and of Karl Biallas, one of its trustees. Both of them expressed the opinion that loss of tax revenue resulting from disconnection of the Village area would impair the ability of the District to render fully adequate fire protection service to the remaining territory. Emil Valovic, a qualified fire protection consultant, did not testify directly regarding this ultimate issue but did express the opinion that expansion of the District equipment was necessary for continuation of fully adequate service. On the contrary, the Village called its own fire chief, Robert F. Murray, but did not elicit his opinion regarding the basic issue before the court. Similarly, no such opinion was expressed by Boyd Hartley who also testified for the Village. He confined his evidence to a consideration of the fire fighting equipment presently operated by the District. Cross-examination showed, however, that he had never examined this equipment or the District fire station and he did not consult with the District fire chief.

■■ The remaining witness called by the respondent, Edward Benjamin, limited his testimony entirely to the matter of financial ability of the District in event of disconnection. He expressed the opinion that in event of disconnection of the Village, the remaining area in the District would not be financially impaired but could "sustain its operation on a financially continuing basis." However, as above shown, this witness predicated his opinion upon two assumptions, either or both of which might well prove invalid. He assumed an assessed valuation for the real estate remaining in the District without ever having made a survey of the area. He also assumed that the assessed valuation of the remaining property in the District would continue to rise. Protection of property and life within the fire protection district, when measured by the exact-

ing criterion of full adequacy, should not depend upon the propriety and soundness of assumptions of this type. The opinion of this witness, thus based upon hypotheses which may later prove erroneous, does not overcome the evidence adduced by the District.

As regards financial matters, we should also point out that it has been the law of Illinois for many years that "[i]n the absence of statutory authority, the rule is that the part of a school district or other municipal corporation which remains after parts have been detached retains all its property, powers, rights and privileges and remains subject to all its obligations and duties." (*People ex rel. Hagler v. Chicago, Burlington & Quincy R.R. Co.*, 380 Ill. 120, 127, 43 N.E.2d 989, and other cases there cited. See also *People ex rel. Community High School District No. 231 v. Hupe*, 2 Ill.2d 434, 439, 118 N.E.2d 328.) The statute before us provides that general obligation bonds of the District outstanding and unpaid in event of disconnection are to remain a proportionate liability of the disconnected territory. (Ill. Rev. Stat. 1973, ch. 127½, par. 38.3.) The District here has no outstanding general obligation bonds. However, it does have large liabilities such as a real estate mortgage for $329,000 and other amounts representing the cost of expensive equipment.

Since the legislature has provided that the disconnected territory shall retain its proportionate liability on general obligation bonds only, and has not imposed the same rule with reference to other items of indebtedness, it would follow that there would be no liability upon the disconnected territory with reference to ordinary debts. This would leave the remaining area of the District subject to all outstanding indebtedness with a loss of approximately 24.5% of its revenue. Although the record contains a statement by Edward Benjamin that after disconnection the remaining portions of the District would have sufficient tax receipts to retire debts, this opinion is subject to the same infirmities as the balance of the testimony of this witness.

Certainly the able trial judge had an opportunity which we lack to observe the conduct of the witnesses and to determine their credibility. We should not disturb the findings of the trial judge and substitute our own opinion unless we feel that the result reached by him was manifestly against the weight of the evidence. (*Reese v. Melahn*, 53 Ill.2d 508, 512, 513, 292 N.E.2d 375.) However, this is not the usual case involving a determination of the credibility of witnesses. As above pointed out, aside from questionable evidence on financial matters, there is no expert opinion in this record to contradict the opinion evidence adduced by the District that disconnection would impair fully adequate fire protection. It has been repeatedly held that it is the duty of this court to reverse a judgment when the result reached is contrary

to the manifest weight of the evidence. *Thomas v. Le Burkian*, 10 Ill.App.3d 742, 744, 295 N.E.2d 313.

Furthermore, the parties here stipulated that the District in its present form does render fully adequate fire protection. As above stated, the pertinent statute places the burden of proof upon the District of demonstrating that the disconnection will prevent it from maintaining this high standard. In our opinion, that burden has been met and sustained in the case before us. We find from this record that attempts by the Village to refute this evidence have failed. This court does not wish to be placed in the position of approving a disconnection with resulting substantial loss of tax revenue to the District where the evidence shows so clearly that such action would impair the present fully adequate fire protection.

Upon a careful review of the entire record and after extended consideration, we feel that the evidence requires a decision contrary to that reached by the trial court so that the order of disconnection should be reversed. Although a constitutional issue was raised by the District and decided by the trial court, we need not consider or determine this issue as we find it unnecessary to a decision of the case. *People v. Fleming*, 50 Ill.2d 141, 144, 277 N.E.2d 872.

Judgment reversed.

BURKE and HALLETT, JJ., concur.