NORTH MAINE FIRE PROTECTION DISTRICT, Petitioner-Appellant, *v.* THE VILLAGE OF NILES, Respondent-Appellee.

First District (3rd Division)   Nos. 59744-59746 cons.

Opinion filed September 14, 1977.

Wilhelm F. Levander, of Des Plaines, for appellant.

Richard J. Troy, of Chicago, for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Three petitions were filed by North Maine Fire Protection District (the District) against the Village of Niles (the Village) to prevent the automatic disconnection of three parcels of property annexed by the Village. The District argued that the automatic disconnection of these parcels would impair the ability of the District to provide adequate fire protection and in two cases that the disconnection would cause the territory remaining in the District to be noncontinguous in contravention of section 20 of "An Act in relation to fire protection districts" (Ill. Rev. Stat. 1969, ch. 127½, par. 38.3) which states:

"Any territory within a fire protection district that is or has been annexed to a city, village or incorporated town that provides fire protection for property within such city, village or incorporated town is, by operation of law, disconnected from the fire protection district as of the January first after such territory is annexed to the city, village or incorporated town, or in case any such territory has been so annexed prior to the effective date of this amendatory Act of 1965, as of January 1, 1966. Such disconnection by operation of

law does not occur if, within 60 days after such annexation or after the effective date of this amendatory Act of 1965, whichever is later, the fire protection district files with the appropriate court a petition alleging that such disconnection will cause the territory remaining in the district to be noncontiguous or that the loss of assessed valuation by reason of such disconnection will impair the ability of the district to render fully adequate fire protection service to the territory remaining with the district. When such a petition is filed, the court shall set it for hearing, and further proceedings shall be held, as provided in Section 15 of this Act. At such hearing, the district has the burden of proving the truth of the allegations in its petition."

After hearing the evidence of the District the court dismissed the petitions on the Village's motion and after argument denied the District's motion to vacate the dismissals. The District appeals contending that the court erred in excluding the opinion evidence of a District trustee on the question of impairment; that the decision of the trial court is against the manifest weight of the evidence; and that the question of contiguity was properly before the court.

The North Maine Fire Protection District was chartered in 1952 to provide fire protection for residents and property in an unincorporated area of Maine Township, Cook County, Illinois covering approximately 6½ square miles. Until December 1969 when the District's own fire department went into service, fire protection was provided under contracts with the neighboring City of Des Plaines and Village of Niles.

On April 28, 1970, the Village adopted ordinances 1970—11 and 1970—12 which annexed two parcels of land, which for the sake of brevity, will be referred to as parcel "A" and parcel "B" respectively. On May 26, 1970, the Village adopted ordinance 1970—20 which annexed parcel "C". Within the 60 days prescribed by statute the District filed petitions to prevent the automatic disconnections of these parcels. In 1969, parcel "A" had a total assessed valuation of $496,317; parcel "B", $1,444,986; parcel "C", $1,498,355. The total valuation was $3,439,658. The resulting tax levy on the three parcels at the tax rate of $3 per thousand would be $10,319. The total tax levy on all property within the District including the three parcels in question would be $161,563. The District estimated a deficit of approximately $18,000 if the three parcels remained in the District and a deficit of approximately $28,000 if that property were disconnected.

The District first argues that the trial court erred in excluding the opinion evidence of Henry A. Coopmans, president of the board of trustees of the District. Coopmans was called as a witness by the District. He testified that he had lived in the District and had been a trustee since 1952. From 1952 to 1969, fire protection was provided by DesPlaines

under a contract with the District. In 1966 after DesPlaines notified the District that they wished to terminate the contractual arrangement, the board of trustees called for public referenda for a $500,000 bond issue and to increase the District's tax levying power from $1.25 per thousand dollars of assessed valuation to $2.50 per thousand. The District then purchased a site and built and equipped a fire station.

It was stipulated that the assessed valuation for the District for 1969 was $53,854,503, including the valuation of the property described in the three petitions.

Coopmans testified further that the tax levy was raised to $3 per thousand which was the 1970 rate.

■■ At the end of his direct testimony this colloquy took place:

"Q. Now, Mr. Coopmans, based upon your experience as president and member of the Board of Trustees of the Fire District, and your knowledge of the cost of operating the District, do you have an opinion concerning whether the loss of assessed valuation in the territory set forth in these three petitions would impair the ability of the District to render fully adequate fire protection services to the territory remaining in the District?

MR. TROY: Objection. This is the ultimate fact for Your Honor to determine. It is the province of the Court to determine that fact. That is the issue of the case, and it is not the opinion of the president of the Board to make this determination, but rather the Court.

THE COURT: Objection sustained."

The District argues that the trial court erred in excluding the opinion evidence of Coopmans. The Village points out that the question of impairment of the District's ability to render fully adequate fire protection was the ultimate issue in the case. The objection was founded on the fact that section 20 of "An Act in relation to fire protection districts" (Ill. Rev. Stat. 1969, ch. 127½, par. 38.3), under which these cases were brought, requires an ultimate decision by the trial court as to whether or not the disconnection of property will result in such impairment. The Village maintains that the court correctly sustained the objection since testimony on the ultimate issue invades the province of the trier of fact. (*Hughes v. Wabash R.R. Co.* (1950), 342 Ill. App. 159, 95 N.E.2d 735.) However, it is clear that since the trier of fact is not required to accept the opinion of the expert, such evidence does not usurp the province of the trier of fact. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 273 N.E.2d 809.) In a similar case, *In re Roberts Park Fire Protection District* (1974), 20 Ill. App. 3d 282, 314 N.E.2d 208, *rev'd on other grounds* (1975), 61 Ill. 2d 429, 337 N.E.2d 8, where the testimony

of the fire chief was elicited on the same ultimate question of impairment under section 20, the appellate court stated:

> "Matters of fire prevention are generally beyond the knowledge or understanding of the average person and they are exceedingly difficult of comprehension and explanation. It was proper for counsel for both parties to elicit the opinion of expert witnesses regarding the ultimate question before the court. (Citations.) Despite early precedents to the contrary, the reviewing courts of Illinois have approved the practice of permitting the expert to express directly his opinion upon ultimate issues on the theory that 'since the trier of fact is not required to accept the opinion of the expert, such evidence does not usurp the province of the jury.' (*Merchants National Bank v. E. J. & E. Ry. Co.*, 49 Ill. 2d 118, 122, 273 N.E.2d 809.)" 20 Ill. App. 3d 282, 288-89.

■■■ It should be noted that both *Roberts Park* (1974) and *Merchants* (1971) were decided after the trial court in the instant case had rendered its decision. We agree with these later cases that it would have been permissible to allow Coopmans to testify as to the ultimate issue if he otherwise qualified as an expert. However, the failure of the court to allow such testimony if error, is not necessarily reversible error unless prejudice is shown. The burden of showing prejudicial error is on the party seeking reversal. (*Atz v. Goss* (1974), 21 Ill. App. 3d 878, 316 N.E.2d 29.) Other witnesses testified that the estimated expenditures were "essential" to furnishing "good fire protection" and that the budgeted amounts were "reasonably necessary for the maintenance and operation of the Fire District." Failure to allow Coopmans' opinion testimony, under these circumstances did not constitute reversible error.

The District next argues that the decision of the trial court is contrary to the manifest weight of the evidence. All testimony was from witnesses called by the District. The Village called no witnesses. Reduced to its simplest terms the District's witnesses argue that the automatic disconnection of the three parcels of property would result in depriving the District of more than $10,000 in revenue which would be applicable to the District's budget for 1970. The District argues that this disconnection would impair the ability of the District to render fully adequate fire protection. The District points out that the expenditures of District funds for 1970 were estimated at $167,555 and that funds on hand at the end of 1970 would be approximately $17,000. In 1970 the Board adopted an ordinance, authorized by statute, increasing its tax levying power from $2.50 to $3 per thousand of assessed valuation. The statute authorized the Board to request an increase to as much as $4 per thousand if approved by a referendum. At the time of trial in 1970, the Board had not called for

such a referendum. The estimated funds on hand at the end of 1970 ($17,000) would not cover the deficit of $35,870 representing the shortage between the amount of tax levied and the amount collectible in 1971, thus even if the three parcels in question remained in the District a deficit of $18,000 would remain. Disconnection would increase that deficit to $28,000. The District argues that the latter sum would exceed the annual salaries of three of the District's firemen. The fire chief in his testimony indicated that the District has 15 full time firemen and 30 paid-on-call firemen. He recommended the hiring of six additional firemen in 1970. Three additional firemen had been hired at the time of trial and after the date of annexation. He felt that they were now operating with the absolute minimum of paid personnel. Based on this and other testimony the District argues that the loss of even one fireman would impair the District's ability to render fully adequate fire protection.

■■■ In the similar case of *In re Roberts Park Fire Protection District* (1975), 61 Ill. 2d 429, 438, 337 N.E.2d 8, our supreme court stated:

"A disconnection by operation of law is to be prohibited when it will result in a *material* impairment of the fire district's ability to render fully adequate fire protection." (Emphasis supplied.)

Under the circumstances of the instant case, where the District had the ability to increase the tax levy by $1 per thousand to $4 and did not do so; where the District will be deprived of some $10,000 in revenue in an overall budget of $161,000; where three additional firemen were hired after the three parcels in question were annexed; and where the disconnection would result in less territory to be protected by the District, we cannot see that the resulting loss of tax revenue could constitute a *material* impairment.

■■ Finally, the District argues that the disconnection of two of the parcels, Parcel "B" and Parcel "C", would cause territory remaining in the District to be noncontiguous in violation of section 20. The Village correctly points out that in 1966 the Village annexed a certain parcel, Parcel "D", which caused the original noncontiguity. Parcels "B" and "C" abut parcel "D." The District argues that the 1966 annexation is invalid because of the Village's failure to provide the District with proper notice as required by statute. (Ill. Rev. Stat. 1965, ch. 24, par. 7—1—1.) That annexation is currently the subject of a suit pending in the circuit court. No pleadings were filed in the instant case challenging the 1966 annexation. Whether or not the noncontiguity was created in 1966 depends, of course, upon the validity of that annexation which is being challenged in the pending *quo warranto* proceeding. (Ill. Rev. Stat. 1971, ch. 112, par. 9.) The question of whether parcels have been legally annexed can only be tried by *quo warranto* proceedings and cannot be raised collaterally. (*Village of Bridgeview v. City of Hickory Hills* (1971),

1 Ill. App. 3d 931, 274 N.E.2d 925.) The question of noncontiguity is therefore not properly before this court.

For these reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.