GEORGE N. KEKUA, SR., individually and as Administrator of the Estate of GEORGE N. KEKUA, JR., deceased, and MARTHA KEKUA, Plaintiffs-Appellees *v.* KAISER FOUNDATION HOSPITAL; KAISER FOUNDATION HEALTH PLAN, INC.; HAWAII PERMANENTE MEDICAL GROUP, INC.; and JARRETT GALBRETH, Defendants-Appellants

NO. 5851

OCTOBER 15, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ.*

---

*Justices Kobayashi and Kidwell, who heard oral argument in this case, retired from the court on December 29, 1978, and February 28, 1979, respectively. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

OPINION OF THE COURT BY RICHARDSON, C.J.

George N. Kekua, Sr., and his wife, Martha, brought a tort action against Kaiser Foundation Hospital, Kaiser Foundation Health Plan, Inc., Hawaii Permanente Medical Group and Dr. Jarrett Galbreth (hereinafter referred to collectively as appellants) for money damages arising out of the death of their son, George N. Kekua, Jr. (hereinafter decedent or George Jr.). The court below, sitting without a jury, found for the plaintiffs and the defendants appealed. For the reasons that follow, we affirm.

On October 23, 1973, Mr. and Mrs. Kekua (hereinafter appellees) filed in circuit court a complaint alleging, in essence, that their son's death had been proximately caused by appellants' negligence. In particular, the complaint averred that appellants had failed to properly examine, diagnose, and treat the decedent during his last illness. The trial of the case commenced on October 16, 1974, and ran for a period of five days. Although both the appellees and the appellants called numerous lay and expert witnesses to testify in support of their respective causes, gross inconsistencies and contradictions pervaded the testimonies adduced.

The pertinent factual findings of the trial judge can be summarized as follows: The decedent was born on June 30, 1941. During the late afternoon of February 3, 1972 — the day before his demise — he was taken by his parents to Kahuku Medical Clinic suffering from symptoms of high fever, vomiting, diarrhea, runny nose, and soreness of the head and chest. At the clinic, he was examined by Dr. Peter Yap, who detected moist, coarse rales (abnormal, loud grating or bubbling

sounds indicative of secretions of the major bronchi; congestion) upon listening to decedent's chest with a stethoscope. The patient's temperature was recorded at 104 degrees.

Upon completing his examination, Dr. Yap informed appellees that their son was very ill and required immediate hospitalization. Since George Jr. was a member of the Kaiser health plan, the doctor instructed the office receptionist, Julie Fernandez, to call Kaiser Hospital in Honolulu to arrange for his admission there. Accordingly, Ms. Fernandez contacted the hospital and was informed that a bed would be available for George Jr. Ms. Fernandez was further advised by Kaiser Hospital that the decedent could either be directly driven into Honolulu or, if he got worse, be taken to Kaiser Koolau Clinic in Kaneohe where an ambulance would be dispatched to transport him the rest of the way. The appellees were then notified of this arrangement.

Thereupon, appellees left Kahuku Medical Clinic with George Jr. and drove directly to the Kaiser Koolau Clinic. Upon their arrival at approximately 5:00 p.m., the decedent was examined by the after-hours physician on duty there, defendant-appellant Dr. Jarrett Galbreth. Although the patient's temperature was recorded at 103.2 degrees, Dr. Galbreth advised appellees that their son was not sick enough to be hospitalized. At this time, Mr. Kekua told appellant Galbreth that they had just come from Kahuku Medical Clinic where another physician had examined the decedent and determined that he required immediate hospitalization. Nevertheless, the doctor refused to hospitalize George Jr. and instead ordered that he be given an injection and a prescription for medication to counteract the symptoms complained of. Neither the injection ordered nor the medication prescribed was antibiotic.

After picking up the prescribed medicine at a nearby drug store, appellees drove their son home, gave him the medicine and put him to bed. In the early morning of February 4, 1972 — sometime between 1:00 a.m. and 2:00 a.m. — appellees were awakened by a loud noise and soon discovered George Jr. on the floor of his room. An ambulance was then summoned and the decedent was transported to Kahuku Hospi-

tal. At 4:15 a.m. on February 4, 1972, George Kekua, Jr. was pronounced dead. Despite conflicting testimony as to the cause of decedent's death, the trial judge determined that George Jr. had died of bronchopneumonia.

Based on the foregoing factual findings, the trial judge concluded that the care, examination, diagnosis, and treatment by the appellants with respect to the decedent did not meet the standards of reasonable medical care in the community, in that: (1) appellant Dr. Galbreth should have heard moist, coarse rales in his examination of George Jr.; (2) Dr. Galbreth failed to determine the cause of his patient's abnormally high temperature and did not perform further diagnostic tests such as x-rays, blood sampling, blood pressure, and sodium and potassium tests; (3) Dr. Galbreth failed to prescribe any drugs effective to combat bronchopneumonia and failed to heed the notice by appellees that George Jr. had been previously examined by another doctor, diagnosed as being very ill and in need of immediate hospitalization; and (4) at the time of his examination and treatment of the decedent. Dr. Galbreth was acting within the course and scope of his employment as agent, employee and member of the Kaiser Foundation Hospital, Kaiser Foundation Health Plan, Inc., and the Hawaii Permanente Medical Group. Further, the trial court found that failure of appellants to meet the standard of reasonable medical care in the community was the proximate cause of the death of George Kekua, Jr.

During the course of trial, the appellants' primary theory of defense was that George Jr. had actually been treated by Dr. Yap at the Kahuku Medical Clinic for asthma and, accordingly, had been given an injection containing adrenaline to restore normal breathing. Appellants therefore claimed that, at the time of his examination, Dr. Galbreth would have been unable to determine that the decedent was possibly suffering from pneumonia. In its findings of fact, the trial court conceded that the credibility of the witnesses presented was the determining factor in the case and it specifically stated that it did not believe that any treatment or injection was given to

George Jr. at the Kahuku Medical Clinic, notwithstanding the testimonies proffered by defense witnesses to the contrary.

In the instant appeal, appellants contend that they were denied their right to a fair and impartial trial by virtue of numerous erroneous evidentiary rulings on the part of the trial judge. More specifically, appellants argue that the trial court erred in (1) prohibiting the impeachment of plaintiffs' witnesses by refusing to allow the use of depositions as impeachment evidence; (2) refusing to allow a defense witness to testify as to out-of-court statements made by plaintiffs regarding the medical care and treatment of the decedent before he was examined by Dr. Galbreth; (3) limiting the cross-examination of plaintiffs' medical expert witnesses to an extent which deprived appellants of their right to a fair and impartial trial. In addition to the above alleged points of error, appellants urge that the trial court committed other miscellaneous errors that had the cumulative effect of prejudicing their defense.

1. *Use of depositions for impeachment purposes.* The first ground for reversal urged by appellants involves the use of depositions for the purpose of impeachment. In short, appellants claim that the trial court improperly refused to allow them upon cross-examination to discredit the testimonies of two plaintiff witnesses — receptionist Julie Fernandez and Dr. Peter Yap — through the introduction of depositions containing prior inconsistent statements.

Generally speaking, prior inconsistent statements concerning noncollateral matters are admissible in evidence for the purpose of impeaching a witness. *See* HRS §§ 621-23 and 621-24 (1976); *State v. Napeahi,* 57 Haw. 365, 371-72, 556 P.2d 569, 572-74 (1977); *State v. Pokini,* 57 Haw. 26, 29, 548 P.2d 1402, 1404-5 (1976); *Asato v. Furtado,* 52 Haw. 284, 288, 474 P.2d 288, 292 (1970); *In re Estate of Ching,* 46 Haw. 127, 132-33, 376 P.2d 125, 128 (1962); *Territory v. Wong Pui,* 29 Haw. 441, 448-49 (1926); *The King v. Apuna,* 3 Haw. 166, 169-70 (1869). Moreover, the use of depositions containing prior inconsistent statements for the purpose of impeaching the testimony of a deponent as a witness is specifically authorized by court rule. *See* Rule 32(a) (1) of the Hawaii Rules of

Civil Procedure. Therefore, once the foundational requirements for admission are met,[1] a refusal of the trial court to admit a deposition offered for the purpose of impeaching the credibility of a witness may constitute reversible error. *See, e.g., Priest v. Lindig,* 583 P.2d 173, 180-81 (Alaska 1978); *Rodford v. Sample,* 30 App. Div. 2d 588, 290 N.Y.S. 2d 30 (1968); *cf. State v. Napeahi, supra* (exclusion of competent testimony designed to impeach the credibility of a material witness in a criminal prosecution was error that infringed upon the constitutional right of the accused); *State v. Pokini, supra* (semble).

Notwithstanding the allegation by appellants that the depositions of Fernandez and Yap were improperly excluded by the court below, nowhere in the record is there any indication that those depositions were ever offered into evidence by appellants' counsel. Although it appears that appellants were prevented from showing the depositions to the two witnesses during cross-examination, it seems clear to this court that appellants were, at that time, only attempting to refresh the recollection of the witnesses rather than trying to put the depositions into evidence.[2] When given the opportunity to impeach the witnesses through the introduction of proof of

---

[1] The foundation requirement for proof of prior inconsistent statements is set forth in HRS § 621-23, which provides:

> If a witness upon cross-examination as to a former statement made by him relative to the subject matter of the cause or prosecution and inconsistent with his present testimony, does not distinctly admit that he has made the statement, proof may be given that he did in fact make it; but before such proof can be given, the circumstances of the supposed statement sufficient to designate the particular occasion must be mentioned to the witness, and he must be asked whether or not he has made the statement.

As explained by this court in *State v. Pokini, supra,* "[t]he foundation requirement is for the purpose of rekindling witness' memory and substantial compliance is all that is necessary". 57 Haw. at 29, 548 P.2d at 1405; *also cited in State v. Napeahi,* 57 Haw. at 372, 556 P.2d at 574.

[2] With respect to the trial court's alleged refusal to admit the deposition of Julie Fernandez, the relevant portion of the transcript reads as follows:

[Cross-examination by Mr. Beck, the appellants' counsel]

MR. BECK: Could we have Mrs. Fernandez's deposition opened, your Honor.

prior inconsistent statements, appellants did not proceed. Under these circumstances, we fail to discern any error on the part of the trial court. *See* E. Cleary, et al., McCORMACK'S HANDBOOK OF THE LAW OF EVIDENCE § 51 (2d ed. 1972); 3 I. Goldstein & F. Lane, GOLDSTEIN TRIAL TECHNIQUE § 20.08 (2d ed. 1969); *cf. Ryder Truck Lines, Inc. v. Scott*, 129 Ga. App. 871, 874, 201 S.E.2d 672, 675 (1973) (where cross-examiner merely recalled to the witness his allegedly inconsistent statements contained in a deposition and such deposition was never offered into evidence, the trier of fact could only consider testimony of witness adduced at trial); *Keatts v. Shelton*, 191 Va. 758, 764-65, 63 S.E.2d 10,

---

THE COURT: You may.

Q. (by Mr. Beck) Mrs. Fernandez—

THE COURT: Don't show it to her. Ask the question first.

Q. Did I take your deposition, Mrs. Fernandez, in my Law Firm on January 11, 1973?

A. I believe you did, yes.

Q. And you were physically present and Mr. and Mrs. — Mr. Tom and Mr. Ventura were there, were they not?

A. Right.

Q. And you were put under oath to tell the truth at that time.

A. Right.

Q. And the deposition was taken and typed up; is that right?

A. I believe so, yes.

Q. And did you agree to waive the signing of your deposition?

A. Yes, I believe so.

THE COURT: Ask the question first, the pertinent question before you show her the deposition. Maybe you don't need to show her the deposition.

Q. (by Mr. Beck) Mrs. Fernandez, at that deposition —

THE COURT: No, no, no. Ask the question first, what you want of this witness.

Q. (By Mr. Beck) Mrs. Fernandez, did you do all of the billing work at Dr. Heder and Dr. Yap's office in February of 1972?

A. All of the billing work, sir?

Q. Yes.

A. No.

THE COURT: Ask the question. You don't have to show her the deposition. Do it properly. She is not a party. She's a witness. Ask her what she testified to in her deposition.

Q. (by Mr. Beck) Did you testify on the deposition that you did all of the billing work at Dr. Heder and Dr. Yap's office in February of 1972?

A. I can't recall that, sir.

Q. How about in January of 1972, did you do all the billing in Dr. Yap's and Heder's office?

A. No.

13 (1951) (merely calling witness' attention to a prior inconsistent statement does not amount to an attempt to put such statement into evidence).

2. *Admissibility of appellees' out-of-court statements*. As mentioned previously, the factual theory proffered by appellants at trial was that, at the time of his examination by Dr. Yap at the Kahuku Medical Clinic, George Jr. had been given

---

Q. Did you ever tell me on oral deposition that you did all the billing work in January of 1972 in that office?

A. I can't remember that, sir.

MR. BECK: With the court's permission, I'd like to refresh her recollection.

THE COURT: No, she said she doesn't remember, that's it. She doesn't deny it.

MR. BECK: Oh, she doesn't deny it.

THE COURT: She doesn't remember, that's all. She's not a party. She's just a witness, Mr. Beck, so do it the proper way.

MR. BECK: All right.

Q. (by Mr. Beck) Mrs. Fernandez, did you ever examine any billing or computer printout forms for the office visits of George Kekua, Jr. to Yap's office on February 3, 1972?

A. I don't believe I did, sir.

Q. Are you familiar at all with the coding for the office visit or the medical services for the computer forms in February of 1972?

A. I do — I did work with the coding. Right now, I cannot remember the code numbers, but I believe I did work with the coding at that time, yes.

Q. And just to make it clear in my mind, the risk of being repetitive, is it your testimony that you in fact did not do anything about the data processing or coding of George Kekua, Jr.'s visit to Yap's office on February 3, '72?

A. I believe I didn't.

Q. You believe you didn't.

A. I can't remember, sir, but I believe I didn't.

Q. You don't have any kind of notes or memoranda to refresh your recollection or to assist you in that recollection, do you?

A. No.

(At this point, counsel for appellants departed on another course of inquiry.)

As to the trial court's alleged refusal to admit the deposition of Dr. Peter Yap, the transcript reveals the following discourse between counsel, the court, and the deponent-witness:

Q. Now, Dr. Yap, didn't you tell me when I took your deposition that when the Kekuas left your office, the understanding you got is that they were going to the Kaiser Koolau Clinic?

A. They had an opportunity either, I guess from my notes here —

Q. Doctor, I'm asking you, didn't you tell me on the deposition?

A. I can't remember the —

an injection containing adrenaline to alleviate his asthmatic condition. Accordingly, appellants argued that, because of this prior treatment, appellant Dr. Galbreth was not negligent in failing to detect symptoms indicating that the decedent required hospitalization or that he was possibly suffering from pneumonia. In support of their cause, appellants called two witnesses — nurse Donna Maiava and Dr. Marinus Kreiger — to testify that, on the morning of George Jr.'s death, appellees informed them that Dr. Yap had given the decedent an injection for his breathing problems. Although the testimony of Dr. Kreiger was allowed to stand, the trial court struck from the record all testimony of nurse Maiava pertaining to the statements made to her by appellees.

Appellants now assert that the trial court improperly excluded such testimony since the statements made by appellees to nurse Maiava constituted "admissions against interest,"[3] a recognized exception to the hearsay rule. Additionally, they assert that they were further prejudiced by the trial court's ruling because it precluded them from incorporating nurse Maiava's testimony into hypothetical questions posed to two of their expert witnesses.

---

MR. TAM (appellees' counsel): I think you should let the doctor answer.

THE COURT: He says he can't remember.

Q. Doctor, would it refresh your recollection if you looked at the deposition which I took from you?

MR. TAM: Objection, your Honor.

THE COURT: Objection sustained. That's not the proper way of examining the witness. He says he doesn't remember what he's told you.

MR. BECK: Yes, your Honor. I'm moving on to another question.

[3] The expression, "admissions against interest," is a misnomer. Appellants have apparently confused "party admissions," discussed *infra*, with "statements against interest". Whereas the latter is considered to be an exception to the hearsay rule and therefore admissible under certain circumstances, the modern view treats party admissions as being outside the scope of the exclusionary rule. *Compare* Fed. R. Evid. 801(d) (2) *with* Fed. R. Evid. 804(b) (3). Moreover, party admissions, unlike statements against interest, need not have been against the declarant's interest when made, need not be based on the declarant's personal knowledge, may be in the form of an opinion, and are admissible at trial regardless of whether the declarant is unavailable. *See* 4 J. Weinstein and M. Berger, WEINSTEIN'S EVIDENCE ¶ 801(d)(2) [01] (1977).

Extrajudicial statements come within the purview of the hearsay rule when they are offered in evidence for the truth of the matter asserted therein. *See Barretto v. Akau,* 51 Haw. 383, 391-92, 463 P.2d 917, 922 (1969); *Territory v. Williams,* 41 Haw. 348, 351-53 (1956). Ordinarily, such statements are inadmissible at trial, *e.g., State v. Murphy,* 59 Haw. 1, 16-17, 575 P.2d 448, 459 (1978); *Makekau v. Kane,* 20 Haw. 203, 208 (1910); *Lyman v. Hilo Tribune Publishing Company,* 13 Haw. 453 (1901); unless they can be characterized as exceptions to the hearsay rule, *see, e.g., Warshaw v. Rockresorts, Inc.,* 57 Haw. 645, 648-51, 562 P.2d 428, 432-34 (1977) (business record); *State v. Altergott,* 57 Haw. 492, 502-05, 559 P.2d 728, 735-37 (1977) (past recollection recorded); *Apo v. Dillingham Investment Corp.,* 57 Haw. 64, 67-69, 549 P.2d 740, 742-43 (1976) (declarations about family history; recitals of pedigree in deed); *Teixeira v. Teixeira,* 37 Haw. 64, 71-73 (1945) (statements concerning state of mind); *Anduha v. County of Maui,* 30 Haw. 44, 50-51 (1927) (excited utterances), or unless the declarant is not available as a witness and it can be demonstrated that they are otherwise reliable and trustworthy, *see Hew v. Aruda,* 51 Haw. 451, 456-57, 462 P.2d 476, 480 (1969).

Here, although nurse Maiava's testimony as to the statements made to her by the appellees may have had definite hearsay qualities (*i.e.,* the statements testified to were made out-of-court and were offered for the truth of the matter asserted), there is no question that such evidence was admissible into evidence as party admissions and, therefore, not susceptible to hearsay attack. The extrajudicial statements of a party-opponent, when offered against the same, are universally deemed admissible at trial as substantive evidence of the fact or facts stated.[4] See *e.g., Christensen v. State Farm*

---

[4] The rule allowing the admission of out-of-court statements of party-opponents for substantive purposes has been said to pre-date the hearsay rule itself, and is grounded upon the adversary theory of litigation rather than any circumstantial indicia of reliability. E. Morgan, BASIC PROBLEMS OF EVIDENCE 265-66 (4th ed. 1963).

*Automobile Insurance Co.,* 52 Haw. 80, 83-84, 470 P.2d 521, 524 (1970); *Bonacon v. Wax,* 37 Haw. 57, 61-62 (1945). *See generally* E. Cleary, et al., McCORMACK'S HANDBOOK OF THE LAW OF EVIDENCE § 262; 4 Wigmore, EVIDENCE § 1048 (Chadbourn rev. 1972). Insofar as the trial court excluded nurse Maiava's testimony regarding the statements of appellees allegedly admitting that their son had been previously treated by Dr. Yap, it was in error.[5]

However, notwithstanding a trial court's erroneous rejection of evidence, there will be no reversal where, on the record as a whole, no prejudice results. *Lyon v. Bush,* 49 Haw. 116, 123, 412 P.2d 662, 667 (1966); *Berkson v. Post,* 38 Haw. 436 (1949). Further, Rule 61 of the Hawaii Rules of Civil Procedure provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

After a careful scrutiny of the entire record in this case, this court is of the opinion that the trial court's error in excluding the testimony of nurse Maiava is insufficient ground for upsetting the judgment below. First of all, testimony that was almost identical to that which was sought from nurse Maiava was later received into evidence over the objection of appellees. Dr. Marinus Kreiger, who on the morning of George Jr.'s death was on duty with nurse Maiava at Kahuku Hospital, testified for the defense that he had been

---

[5] Although it was not argued by the appellants and although we need not decide this issue, the admission of nurse Maiava's testimony may have also been justified on the ground that it constituted statements for purposes of medical diagnosis or treatment, a recognized exception to the hearsay rule. *See* Fed. R. Evid. 803(4); 4 J. Weinstein & M. Berger, *supra* at 803(4) [01].

informed by appellee Mrs. Kekua that her son had been given a shot for his breathing problems. Courts have consistently held that the improper exclusion of competent testimony constitutes harmless error where essentially the same evidence is established by the testimony of other witnesses or by other means. *See, e.g., Millsap v. Williamson,* 294 Ala. 634, 320 So. 2d 649 (1975); *State v. Guinn,* 555 P.2d 530, 543 (Alaska 1976); *Bush v. Wyche,* 147 Ga. App. 807, 250 S.E.2d 553 (1978); *North Maine Fire Protection District v. Village of Niles,* 53 Ill. App. 3d 389, 10 Ill. Dec. 921, 368 N.E.2d 516 *(1977); Murphy v. Conway,* 360 Mass. 746, 277 N.E.2d 681 (1972); *Cunningham v. Yankton Clinic, P. A.,* 262 N.W.2d 508, 513 (S.D. 1978); *cf. In re Estate of Ching,* 46 Haw. 127, 376 P.2d 125 (1962) (appellate court will not decide whether the trial court erred in excluding testimony of a witness where, later in the trial, the witness was allowed to give the same testimony that was originally excluded). Secondly, even if the testimony of nurse Maiava was allowed into evidence as proffered, we are convinced that it would not have affected the judgment rendered below since the trial judge — as the sole fact-finder in this case — plainly indicated that he believed the testimonies of Dr. Yap and his nurse Evelyn Miranda, who both stated that George Jr. had not been given any medication at the Kahuku Medical Clinic. Findings of Fact Nos. 3, 18, and 19.

Additionally, appellants' assertion that the trial court's ruling resulted in further prejudice to their case, because it precluded them from incorporating nurse Maiava's testimony into the hypothetical questions posed to two of their expert witnesses, is without merit. Although it is true that appellants were unable to present two of their medical experts with hypothetical questions which included the fact that the decedent had been given an injection by Dr. Yap, those witnesses nevertheless testified that Dr. Galbreth's diagnosis and treatment of George Jr. did in fact conform to the medical standards of care in the community. Furthermore, based on Dr. Kreiger's later testimony that appellees informed him

that Dr. Yap had given the decedent a shot for his breathing problems, appellants were allowed to present a hypothetical question which incorporated such evidence to their third medical expert. Under these circumstances, we fail to perceive any substantial prejudice accruing to the appellants. H.R.C.P. 61.

3. *Right to cross-examination.* During the presentation of their case, appellees called one Dr. Herbert Luke to testify as a medical expert witness. When presented with appellees' hypothetical question, Dr. Luke testified that he believed the care, examination, and treatment of the decedent on the part of the appellants did not meet the standards of reasonable care in the community. Upon cross-examination, the appellants attempted to mitigate the prejudicial impact of Dr. Luke's testimony by, *inter alia,* probing the witness as to whether Dr. Yap's testimony that he detected moist, coarse rales in decedent's chest was consistent with evidence tending to show that the decedent was not experiencing breathing problems at the time of his examination by appellants:

Q. [Mr. Beck, appellants' counsel] Dr. Luke, isn't it true that the only way a patient can get respiratory acidosis is to have impaired breathing?

A. Yes.

Q. And you said in this case the patient had respiratory acidosis, did you not?

A. I think that there's a good probability that he did have it.

Q. You don't know when, from what you see in this case, this patient's impaired breathing started, do you?

MR. VENTURA: I object, your Honor, to the use of impaired breathing.

THE COURT: Objection is sustained.

MR. BECK: Your Honor, may I—

THE COURT: Objection sustained. You want to make an offer of proof, you make it.

MR. BECK: Yes, your Honor. It's understood that the respiratory acidosis, to have that, one must have impaired breathing and I asked him if this patient had and he said, "yes".

THE COURT: All right. You've asked the question and the question has been objected to and I sustained the objection.

MR. BECK: Well, my offer of proof is briefly this, your Honor, that if he said the only way you can get respiratory acidosis is to have impaired breathing, then I simply ask him in this case when did the patient get impaired breathing.

THE COURT: All right. You've asked the question, you've made your offer of proof. Let's proceed.

Appellants now contend that the trial court's curtailment of their cross-examination of Dr. Luke in the above manner was reversible error.

The right to cross-examine a witness, although subject to waiver, is a fundamental right that is basic to our judicial system. *See State v. Hashimoto,* 47 Haw. 185, 196, 389 P.2d 146, 153 (1963); *State v. Brooks,* 44 Haw. 82, 89, 352 P.2d 611, 615-16 (1960). Nevertheless, the extent of cross-examination is a matter largely within the discretion of the trial court and will not be the subject of reversal unless clearly prejudicial to the complaining party. *See Cozine v. Hawaiian Catamaran, Ltd.,* 49 Haw. 77, 101-02, 412 P.2d 669, 685 (1966); *Hoomana Naauao v. Pali,* 35 Haw. 557, 561 (1940); *Territory v. Yadao,* 35 Haw. 198, 202-03 (1939).

Here, it appears that appellees' objection to the line of questioning employed by appellants' counsel went to the use of the term "impaired breathing." As had been explained by the witness during earlier cross-examination, such a term was inherently ambiguous, since it could mean either gasping for air or merely shortness of breath.[6] Since appellants made no

---

[6] Cross-examination by Mr. Beck:

Q. Did he [the decedent] have sufficient pneumonia, in your opinion, on February 3, 1972, to impair his breathing?

A. I don't know what you mean by "impair." Now, if — that's a broad definition, do you mean dyspnea, which we call in medical terminology; one of which he was just (demonstrating gasping of breath) and doing things like that, he

attempt to rephrase the question using more precise language, we believe that the trial court correctly sustained the objection interposed by appellees.

Lastly, appellants claim that the trial court committed several other evidentiary errors which, in conjunction with those previously discussed, had the cumulative effect of denying them a fair trial. These allegations do not warrant extended discussion by this court. We are firmly convinced that such errors, if errors at all, were harmless.

The judgment of the trial court is hereby affirmed.

*Donald A. Beck (Cades Schutte Fleming & Wright* of counsel) for Defendants-Appellants.

*James F. Ventura (Libkuman, Ventura, Moon & Ayabe* of counsel); *Raymond J. Tam,* with him on the brief, *Shim, Sigal, Tam & Naito* of counsel) for Plaintiffs-Appellees.

---

can't get his breath everytime he moves, that maybe one definition of impairment, but on the other hand someone may describe impairment as the patient having some shortness of breath and not showing the severe exertion that he has to exercise to get air, so I don't know what the definition is.