DAVID WAKABAYASHI, Plaintiff, Cross-Appellee, *v.* THE HERTZ CORPORATION, Defendant and Third-Party Plaintiff-Appellee, Cross-Appellant, and JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10; and ROE GOVERNMENTAL ENTITIES 1-10, Defendants, *v.* GENERAL MOTORS CORPORATION, Third-Party Defendant-Appellant

NO. 7769

(CIVIL NO. 50867)

MARCH 1, 1983

LUM, NAKAMURA, PADGETT, AND HAYASHI, JJ.*

---

* Chief Justice Richardson, who heard oral argument in this case, retired from the court on December 30, 1982. HRS § 602-10 (1979 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

OPINION OF THE COURT BY NAKAMURA, J.

The Hertz Corporation (Hertz) appeals from a judgment

awarding David Wakabayashi (Wakabayashi) $150,000 for injuries sustained in a single-car accident involving an automobile he rented from Hertz and the vehicle's manufacturer, General Motors Corporation (General Motors), appeals from a judgment indemnifying the rental agency for its liability. Finding no reversible error affecting the verdict in favor of Wakabayashi, we affirm the judgment against Hertz. But we conclude General Motors should not have been denied permission to depose the plaintiff's expert; and as the denial prejudiced its defense of Hertz' third-party suit, we reverse the judgment against General Motors and remand the case for further proceedings consistent with this opinion.

I.

On February 17, 1977 Wakabayashi, a Los Angeles optometrist attending a convention in Honolulu, rented a 1975 Chevrolet Chevelle from Hertz. The vehicle had been purchased new by Hertz from Aloha Motors, Inc. on July 23, 1975 and had been driven 22,577 miles prior to its rental to Wakabayashi. Three days later Wakabayashi, after having driven the Chevelle slightly more than 120 miles in the interim, drove to the entrance of the basement garage of the Ala Moana Hotel and stopped to obtain a parking stub from the attendant. He claims he placed the car's gear in the "park" position, keeping his right foot on the brake pedal, and, upon receiving a stub from the attendant, he shifted into "drive" and released his foot from the brake pedal. While it is unclear exactly what occurred next, the evidence indicates Wakabayashi either touched the accelerator pedal or was about to touch it when the Chevelle shot forward with a roar down the entrance ramp and into the garage. Wakabayashi testified he put his foot on the brake pedal, and though there was resistance, the vehicle did not come to a stop. To avoid striking a pedestrian in its path, Wakabayashi swerved and rammed the Chevelle into a concrete pillar.

Wakabayashi brought an action seeking damages from Hertz on the theory of strict products liability. Hertz answered with a twofold defense, claiming the Chevelle was not defective

but asserting that if it were, the vehicle's manufacturer was responsible for the defect. Consistent with the latter position, Hertz filed a third-party action against General Motors.

At trial, Wakabayashi conceded he could not offer direct evidence of a specific defect that caused the Chevelle to accelerate out of control. He nevertheless convinced the trial judge that the evidence consisting of his own testimony and the statements of his passengers and the parking attendant, who observed the rear brake lights on the Chevelle as it sped down the ramp, was sufficient to enable the jury to determine the vehicle was defective when rented and to hold Hertz liable for the injuries he sustained.

Hertz' principal defense consisted of testimony that an examination of the Chevelle following the accident uncovered no defects in the vehicle. General Motors relied primarily on the apparent absence of any broken part or other identifiable defect and on expert testimony that the Chevelle consequently could not have accelerated in the manner described by Wakabayashi unless he had depressed the accelerator pedal rather than the brake pedal.

Answering special interrogatories propounded by the trial court, the jury found the Chevelle was defective, the defect was a proximate cause of the accident, Wakabayashi suffered damages amounting to $150,000 as a result of the accident, and the defect was present when the vehicle was initially sold. Judgments in the sum of $150,000 for Wakabayashi and against Hertz and in a like sum against General Motors on Hertz' third-party claim were entered on the basis of the jury verdict. Hertz and General Motors perfected timely appeals, which by stipulation were consolidated for argument and disposition.

II.

Hertz cites three instances of alleged trial error and argues our concurrence on any would require reversal of the judgment against Hertz. We thus examine each of its contentions to determine whether the trial court committed reversible error with respect to Wakabayashi's claim against Hertz.

## A.

Hertz initially argues the trial court erred in denying the motion for directed verdict presented at the close of plaintiff's case on the ground there was no prima facie showing of a defect in the Chevelle. It contends Wakabayashi's failure to adduce direct evidence of a specific defect that could have caused the vehicle to accelerate out of control precluded jury consideration of the plaintiff's claim. In Hertz' view circumstantial evidence alone was inadequate to establish a prima facie case of liability, even under a theory of strict liability, particularly since the Chevelle was not destroyed or its parts so damaged that the vehicle was unavailable for inspection. It urges a holding that circumstantial evidence, by itself, is insufficient as a matter of law to establish a prima facie products liability case. To hold otherwise, it claims, would only invite jury speculation and a flood of litigation even where there is no evidence of defects in the products.

Wakabayashi's thesis, however, is that direct evidence of a defect is not the sole means of establishing a prima facie case where the claim is grounded on strict products liability. He argues circumstantial evidence from which it can be inferred there was a defect that could cause a mishap extant in the product suffices in this regard. Thus in his view, the trial court properly denied Hertz' motion for a directed verdict.

The parties agree the leading Hawaii decision on strict products liability with respect to automobiles is *Stewart v. Budget Rent-A-Car Corp.,* 52 Haw. 71, 470 P.2d 240 (1970). But where Hertz attempts to distinguish *Stewart* from this case on the facts, Wakabayashi would have us apply *Stewart* as controlling precedent for the rule that a prima facie case of strict products liability may be established by circumstantial evidence of a defect that could give rise to an accident.

The plaintiff in *Stewart* was injured when her rented vehicle inexplicably veered to the left side of the road, plunged off an embankment, and turned over. She brought a suit for damages against the rental agency, as well as the automobile distributor and the manufacturer. The jury returned a verdict for plaintiff and against the rental agency, who appealed, claiming a directed verdict should have been entered against plaintiff

because she failed to adduce enough evidence to prove that there was a defect in the vehicle and that such defect was a proximate cause of her accident. The only evidence of a defect presented by plaintiff was her own testimony describing the events immediately preceding the accident. Her expert had discovered that parts of the steering mechanism were broken, but was unable to state whether the accident caused the breakage or whether the accident resulted from a weakness in the steering mechanism. There also was no other eyewitness who could substantiate her testimony. We nevertheless held a directed verdict against the plaintiff would have been improper.

Though we acknowledged "[t]he most convincing evidence [in products liability cases] is an expert's pinpointing the defect and giving his opinion on the precise cause of the accident after a thorough inspection," *id.* at 76, 470 P.2d at 243, we recognized too that "[i]f no such opinion is possible, . . . the user's testimony on what happened is another method of proving that the product was defective." *Id.* And we said "circumstantial evidence is certainly admissible to establish a defect and the fact that it caused the accident." *Id.* at 77, 470 P.2d at 244. Upon reviewing the testimony of the plaintiff and finding it capable of yielding "an inference that there was a defective condition which caused the accident," *id.,* we concluded the defendant's motion for directed verdict was properly denied by the trial judge.

Hertz, however, claims a total reliance on circumstantial evidence to establish a prima facie case of liability was countenanced in *Stewart* only because the "damaged condition of the car and the subsequent changes in the car's condition," *id.,* precluded the formation of an opinion by the plaintiff's expert on whether a defect existed prior to the crash. In its opinion, our holding there in no way supports the proposition that circumstantial evidence without more can be deemed sufficient to withstand a motion for a directed verdict against the plaintiff. It argues *Stewart,* properly applied, calls for a reversal of the trial court's decision to send the case to the jury since the errant vehicle and its vital parts were neither destroyed nor damaged to an extent that expert opinion on the existence of a possible defective condition was unobtainable.

We do not choose to apply the relevant holdings in *Stewart* so restrictively even though the damaged Chevelle was available for inspection by plaintiff's expert, as "[t]he nature and quality of evidence used in products liability cases to show the defect and the nexus between the defect and the accident naturally varies." *Id.* at 76, 470 P.2d at 243.

Here, all of the evidence submitted by the plaintiff was indeed circumstantial in character. But there was more than the "user's testimony on what [had] happened." *Id.* In addition to Wakabayashi's account of the bizarre accident, there were the statements of the passengers in the Chevelle and, more significantly, the testimony of the parking attendant at the hotel garage who observed that the car's rear brake lights were on as it raced down the entrance ramp into the basement garage. We think all of this "was sufficient to yield an inference that there was a defective condition which caused the accident." *Id.* at 77, 470 P.2d at 244. The case was clearly one for consideration by the jury, inasmuch as

[a] directed verdict may be granted only when after disregarding conflicting evidence, giving to the plaintiff's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in plaintiff's favor, it can be said that there is no evidence to support a jury verdict in his favor. See *Young v. Price,* 48 Haw. 22, 395 P.2d 365 (1965); *Elmore v. American Motors Corp.,* 70 Cal. 2d 578, 75 Cal. Rptr. 652, 451 P.2d 84 (1969).

*Id.*

### B.

Hertz next avers reversible error was committed when the trial court, at Wakabayashi's instance, prevented the defendants from apprising the jury of the fact that the plaintiff's expert had examined the damaged vehicle. It claims the ruling was prejudicial because the jury was then unable to infer from the plaintiff's failure to call him as a witness that the Chevelle harbored no defect that would cause an accident. While the court later permitted evidence that the expert in question examined the vehicle as the plaintiff's representative to be

presented to the jury, Hertz maintains it was nevertheless denied the opportunity of presenting this proof in an effective manner since it had rested its case before the earlier ruling was rescinded.

Our review of the record, however, leads us to conclude the claim of reversible error lacks merit, as we do not believe Hertz was actually prejudiced by the trial court's initial reaction that the evidence in question should not be considered by the jury. For information concerning the absence of an identifiable defect in the Chevelle was relayed to the jury, albeit through Hertz' witness. Even an erroneous exclusion of relevant evidence does not necessarily call for reversal of the trial court, if no prejudice results. *Kekua v. Kaiser Foundation Hospital,* 61 Haw. 208, 218, 601 P.2d 364, 371 (1979); *Lyon v. Bush,* 49 Haw. 116, 123, 412 P.2d 662, 667 (1966); *Berkson v. Post,* 38 Haw. 436, 439 (1949). And where essentially the same evidence is given by other witnesses or other means, the trial court's exclusion of relevant evidence constitutes harmless error. *Kekua v. Kaiser Foundation Hospital,* 61 Haw. at 219, 601 P.2d at 371.

C.

Hertz' final claim of reversible error covers the trial court's refusal to qualify one of its primary witnesses as an expert in automotive mechanics and accident analysis. The gravamen of the charge of error is that Hertz was unjustifiably deprived of an opportunity to adduce expert testimony on how the accident might have occurred, as the professed expert was treated as a lay witness.

We have fostered a rule that a trial judge is vested with considerable discretion in deciding whether a witness qualifies as an expert and have often declared that we will not overturn the judge's decision unless an abuse of discretion is clear. *See, e.g., Larsen v. State Savings & Loan Association,* 64 Haw. 302, 304, 640 P.2d 286, 288 (1982); *State v. Torres,* 60 Haw. 271, 277, 589 P.2d 83, 87 (1978); *State v. Smith,* 59 Haw. 565, 569, 583 P.2d 347, 350 (1978); *State v. Murphy,* 59 Haw. 1, 14, 575 P.2d 448, 457 (1978); *City & County v. Bonded Investment Co.,* 54 Haw. 385, 390, 507 P.2d 1084, 1089 (1973); *Bulatao v.*

*Kauai Motors, Ltd.,* 49 Haw. 1, 13, 406 P.2d 887, 893-94 (1965). Hertz claims this is an occasion where a clear abuse of discretion appears and a reversal of the trial court is in order.

Yet a close scrutiny of pertinent portions of the record reveals no misuse of discretionary power, clear or otherwise. The preliminary examination of the witness disclosed that he not only lacked experience with respect to the 1975 model of the Chevelle, but also lacked familiarity with some of its essential parts. We think the trial court could properly have refused to qualify Hertz' witness as an expert under these circumstances, for his expertise in the area of particular concern was doubtful.

In view of the fact that Hertz' assertions of trial error have not been substantiated, we affirm the judgment in favor of Wakabayashi and proceed to a consideration of the appeal brought by General Motors.

### III.

Although General Motors raises several issues, we confine our discussion to the assertion that its pre-trial efforts to discover facts known or opinions held by the expert who had inspected the damaged Chevelle on Wakabayashi's behalf should not have been foreclosed. And as we agree the trial court's error in this regard was prejudicial to General Motors, we find it unnecessary to reach the remainder of the questions posed.[1]

### A.

General Motors made two attempts to depose Wakabaya-

---

[1] These questions are:

(1) Whether the trial court erred in denying General Motors' motion for a directed verdict, on the ground that Hertz failed to produce substantial evidence of a defect in the 1975 Chevrolet Chevelle at the time of its sale by General Motors;

(2) Whether the trial court improperly permitted Wakabayashi to introduce evidence of other accidents involving General Motors automobiles; and

(3) Whether the trial court erred in allowing Wakabayashi to cross-examine a General Motors witness about other accidents not entered into evidence.

shi's expert pursuant to Rule 26(b)(4)(B) of the Hawaii Rules
of Civil Procedure, which under some circumstances sanctions
discovery of facts known or opinions held by an expert who has
been retained by another party but is not expected to testify at
trial.[2]

In the first, it argued the precondition of "exceptional
circumstances" demanded by Rule 26 (b)(4)(B) had been satis-
fied since Wakabayashi's expert had inspected the ill-starred
Chevelle prior to its destruction by Hertz and the first-hand
information he had secured was unavailable to General
Motors due to its being brought into the controversy after the
vehicle's demolition. While the motion seeking leave to depose
the expert was denied, the trial court suggested the possibility
of its renewal if the deposition of Hertz' expert showed the facts
known or opinions held by the plaintiff's expert differed from
that of the rental agency's expert.

The second attempt to discover relevant information
within the knowledge of Wakabayashi's expert was mounted
after General Motors learned when it deposed Hertz' expert
that the plaintiff's expert had independently examined the
damaged vehicle and its parts rather than in conjunction with

---

[2] Rule 26, HRCP reads in relevant part:
GENERAL PROVISIONS GOVERNING DISCOVERY.

.    .    .    .

(b) Scope of Discovery. Unless otherwise limited by order of the court in accor-
dance with these rules, the scope of discovery is as follows:

.    .    .    .

(4) *Trial Preparation: Experts.* Discovery of facts known and opinions held by
experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule
and acquired or developed in anticipation of litigation or for trial, may be obtained
only as follows:

.    .    .    .

(B) A party may discover facts known or opinions held by an expert who has been
retained or specially employed by another party in anticipation of litigation or prepa-
ration for trial and who is not expected to be called as a witness at trial, only as
provided in Rule 35(b) or upon a showing of exceptional circumstances under which it
is impracticable for the party seeking discovery to obtain facts or opinions on the
same subject by other means.

the other expert as it had theretofore supposed. And as the deposition further revealed that neither had discussed his findings or opinions with the other after his inspection, General Motors argued the circumstances were indeed exceptional and that it should be allowed to depose Wakabayashi's expert even though he was not expected to be called as a witness at trial. The renewed motion was nevertheless denied.

### B.

"The Hawaii Rules of Civil Procedure, like the federal procedural rules, reflect a basic philosophy that a party to a civil action should be entitled to the disclosure of all relevant information in the possession of another person prior to trial, unless the information is privileged. *Kalauli v. Lum,* 1 Haw. App. 284, 287, 617 P.2d 1239, 1241 (1980); Rule 26 HRCP; 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2001, at 15 (1970)." *Mehau v. Gannett Pacific Corp.,* 66 Haw. 133, 155, 658 P.2d 316, 326 (1983). Still, "[t]he extent to which discovery is permitted under Rule 26 (as well as under Rules 33 and 34) is subject to considerable latitude and [the] discretion [of the trial court]." *In re Goodfader,* 45 Haw. 317, 335, 367 P.2d 472, 483 (1961). Thus the exercise of such discretion will not be disturbed in the absence of a clear abuse of discretion that results in substantial prejudice to a party.

However, we cannot but agree with General Motors that the "circumstances" in which it found itself in preparing for trial were "exceptional" and fairness impelled that it be allowed to discover facts known or opinions held by plaintiff's expert. For it had been placed in the difficult position of defending the integrity of the mechanism of an automobile five years after its manufacture and after its demolition as well, and the only other expert opinion available on the condition of the Chevelle after the crash was that of the expert retained by Hertz, the primary adversary.

The trial court, in our opinion, committed reversible error as the "exceptional circumstances" prescribed as a prerequisite for the allowance of the discovery sought by General Motors were definitely present and the denial of its Motion to Compel

Production of Expert Witness for Deposition resulted in substantial prejudice.

The judgment in favor of David Wakabayashi is affirmed and the judgment in favor of Hertz is reversed. The case is remanded for the retrial of Hertz' claim against General Motors.

*Burnham H. Greeley (Susan P. Walker, Stacey J. Hendrickson, Stephen A. Jones* with him on the briefs; *Carlsmith, Carlsmith, Wichman & Case,* of counsel; *Otis M. Smith* and *Nicholas J. Wittner* with him on reply briefs; of counsel, General Motors Corp.) for appellant General Motors Corp.

*Stephen B. MacDonald (Cades, Schutte, Fleming & Wright,* of counsel) for cross-appellant Hertz Corp.

*James F. Ventura (Sidney K. Ayabe* with him on the briefs; *Libkuman, Ventura, Ayabe & Hughes,* of counsel) for cross-appellee Wakabayashi.