73 P.3d 73

**Francisco Q. FERRER, Plaintiff–Appellee/Cross–Appellant,**

v.

**Daniel T. NGO, Defendant–Appellant/Cross–Appellee,**

and

**Allstate Insurance Company, Defendant–Appellee/Cross–Appellee.**

No. 24822.

Intermediate Court of Appeals of Hawai'i.

June 20, 2003.

J. Patrick Gallagher, Joelle Segawa Kane, Lynn B.K. Costales, Jacqueline W.S. Amai, Honolulu, Leah M. Reyes (Henderson, Gallagher & Kane), on the briefs, for Defendant–Appellant/Cross–Appellee Daniel T. Ngo.

William Fenton Sink, on the briefs, Honolulu, for Plaintiff–Appellee/Cross–Appellant.

Kevin P.H. Sumida, Lance S. Au, Honolulu, and Ward F.N. Fujimoto, on the briefs, for Defendant–Appellant/Cross–Appellee Allstate Insurance Company.

BURNS, C.J., WATANABE and FOLEY, JJ.

---

1. The word "costs" is defined as all actual disbursements deemed reasonable by the court.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant/Cross–Appellee Daniel T. Ngo (Ngo) appeals and Plaintiff–Appellee/Cross–Appellant Francisco Q. Ferrer (Ferrer) cross-appeals from the December 11, 2001 Judgment on All Claims and Parties (December 11, 2001 Judgment). Pursuant to this December 11, 2001 Judgment, Ngo was the prevailing party regarding Ferrer's complaint and Ferrer was the prevailing party regarding Ngo's request for costs.[1] We affirm the judgment in favor of Ngo, vacate the judgment in favor of Ferrer, and remand. Specifically, we vacate the May 2, 2001 Judgment on Taxation and Assessment of Costs (May 2, 2001 Judgment on Taxation) denying Ngo's request for taxation of costs in the sum of $19,485.49 and remand for the award of reasonable costs consistent with this opinion. In all other respects, we affirm.

The most significant question presented is whether, in a tort case, the payment of the prevailing defendant's costs by the prevailing defendant's insurer pursuant to the insurance policy is a valid reason for the court to decide not to order the losing plaintiff to pay the costs reasonably incurred by the prevailing defendant. The answer is no.

## BACKGROUND

This case arises out of a September 4, 1996 collision between Ngo's automobile and Ferrer's automobile. Both drivers were insured by Defendant–Appellee/Cross–Appellee Allstate Insurance Company (Allstate). Allstate's policy insuring Ferrer provided for no-fault benefits and underinsured motorist (UIM) coverage. Ferrer alleged Ngo was liable for Ferrer's neck and back injury.

On April 24, 1998, Ferrer filed a complaint in the District Court of the First Circuit, Honolulu Division (district court), against Ngo and Allstate alleging that they negligently injured Ferrer in the September 4, 1996 automobile collision and refused to pay for Ferrer's damages. Ferrer prayed for judgment against Ngo and Allstate for damages proved, costs, and attorney fees.

*Canalez v. Bob's Appliance Serv. Ctr.,* 89 Hawai'i 292, 306, 972 P.2d 295, 309 (1999).

Hawai'i Revised Statutes (HRS) § 604–5 (Supp.2002) states, in relevant part, as follows:

**Civil jurisdiction.** (a) Except as otherwise provided, the district courts shall have jurisdiction in all civil actions where the debt, amount, or value of the property claimed does not exceed $20,000. . . .

(b) The district courts shall try and determine all actions without a jury, subject to appeal according to law. Whenever a civil matter is triable of right by a jury and trial by jury is demanded in the manner and within the time provided by the rules of court, the case shall be transferred to the circuit court. If the demand is made in the complaint and the matter is triable of right by a jury, the action may be commenced in the circuit court if the amount in controversy exceeds $5,000.

On May 15, 1998, Ngo and Allstate filed a Demand for Jury Trial. Ngo and Allstate were represented by the same lawyers from the same law corporation.

On May 15, 1998, Allstate sought dismissal of Ferrer's complaint on the ground that a party claiming damages for an injury caused by the negligence of another party may not sue the other party's insurer directly. *Olokele Sugar Co. v. McCabe, Hamilton & Renny Co.*, 53 Haw. 69, 487 P.2d 769 (1971). Ferrer opposed the motion on the grounds that (1) he agrees with Justice Kazuko Abe's concurring opinion in *Olokele Sugar Co.*, 53 Haw. at 73, 487 P.2d at 771, "that the insurance company here (which actually paid the claim and would have satisfied a judgment for the claim if the action had gone to trial and judgment was obtained against the defendant) is the real party in interest and pursuant to [Hawai'i Rules of Civil Procedure (HRCP) ] Rule 17(a), should be named as a party defendant"; (2) he had a claim for UIM coverage against Allstate and his naming of Allstate as a defendant avoided the applicable two-year statute of limitation;[2] and (3) when Allstate, as the insurer of both Ferrer and Ngo, did not settle Ferrer's claim against Ngo prior to Ferrer's filing of the complaint, Ferrer had a "first and third party bad faith case"[3] against Allstate and Ferrer's naming of Allstate avoided the applicable two-year statute of limitation.[4]

Judge Kevin S.C. Chang's July 30, 1998 Order Granting Defendant Allstate Insurance Company's Motion to Dismiss Plaintiff Francisco Q. Ferrer's Complaint Filed on April 24, 1998 and Judge Linda K.C. Luke's May 2, 2001 Judgment for Allstate Insurance Company on All Claims and Disputes granted Allstate's motion and dismissed the Complaint against Allstate.

Thereafter, the case was referred to arbitration and, on May 3, 1999, an arbitration award was rendered in favor of Ferrer and against Ngo in the sum of $2,000.00 for special damages and $9,000 for general damages. Pursuant to Rule 22 of the Hawai'i Arbitra-

2. In a memorandum opposing Defendant–Appellee/Cross–Appellee Allstate Insurance Company's (Allstate) motion to dismiss the complaint, Plaintiff–Appellee/Cross–Appellant Francisco Q. Ferrer (Ferrer) contends, in relevant part, as follows:

[A]ll UIM [underinsured motorist] claims have to be made within two years. While, as a practical matter, this is rather difficult given the nature of UIM benefits—which is that no one knows whether they kick in until after the third party case is settled—perhaps the courts were considering judicial economy. After all, there is no reason to have two separate hearings for UIM benefits and third party benefits, so perhaps it makes sense to have all these cases brought together.

3. A "first-party" policy provides coverage for *loss or damage* sustained by the *insured* (e.g., life, disability, health, fire, theft, and casualty insurance) whereby the insurer usually promises to pay money to the insured upon the happening of the risk insured against. A "third-party" policy, on the other hand, provides coverage for the insured's *liability to another* (e.g., CGL [comprehensive general liability], directors' and officers' liability, and errors and omissions insurance) wherein the carrier generally assumes a contractual duty to pay judgments recovered against the insured arising from the insured's negligence. *See generally, Garvey v. State Farm Fire & Cas. Co.*, 48 Cal.3d 395, 770 P.2d 704, 257 Cal.Rptr. 292 (1989).

*Sentinel Ins. Co. v. First Ins. Co. of Hawai'i, Ltd.*, 76 Hawai'i 277, 289, 875 P.2d 894, 906 (1994).

4. Ferrer contends that "[i]t is improper for Allstate to wait until the case is over to determine whether there is bad faith; the moment that [Ferrer chooses] to do that Allstate will say that [Ferrer] did not act in a timely fashion, and assert latches [sic] or a statute of limitations defense."

tion Rules (2003) (HAR), Ngo rejected the award and requested a trial *de novo*.

On May 10, 1999, Ngo served Ferrer with an Offer of Judgment, good for ten days after service, in the amount of $3,000.00, "inclusive of costs accrued." Ferrer did not accept the offer and the matter proceeded to trial.

Judge Luke's November 1, 1999 pretrial decision became a written order in the November 15, 1999 Order Denying [Ferrer's] Motion In Limine to Permit the Introduction of Insurance. After a trial, the jury, by way of a special verdict rendered on November 15, 1999, decided that (1) Ngo was negligent and (2) Ngo's negligence was not the legal cause of injury to Ferrer.

On December 7, 1999, Ferrer filed Plaintiff's Motion for a New Trial, or Alternatively, Motion for Judgment Notwithstanding the Verdict (December 7, 1999 Motion for New Trial). On February 22, 2000, after a hearing on January 27, 2000, Judge Luke entered the Order Denying Plaintiff's Motion for New Trial or Alternatively, Motion for Judgment Notwithstanding the Verdict.

On December 13, 1999, Ngo filed Defendant Daniel T. Ngo's Motion for Entry of Judgment and Taxation and Assessment of Costs. Ngo sought costs in the amount of $19,485.49. After a hearing on January 27, 2000, Judge Luke entered the March 1, 2000 Order Denying Defendant Daniel T. Ngo's Motion for Entry of Judgment and Taxation and Assessment of Costs, which was repeated in the May 2, 2001 Judgment on Taxation.

## NGO'S POINT ON APPEAL

Ngo contends that the May 2, 2001 Judgment on Taxation denying Ngo's request for taxation of costs in the sum of $19,485.49 should be reversed. We conclude that it should be vacated.

## RELEVANT PRECEDENT, STATUTES AND RULES

HRS § 604-5(b) (Supp.2002) states, in relevant part, as follows:

The district courts shall try and determine all actions without a jury, subject to appeal according to law. Whenever a civil matter is triable of right by a jury and trial by jury is demanded in the manner and within the time provided by the rules of court, the case shall be transferred to the circuit court. If the demand is made in the complaint and the matter is triable of right by a jury, the action may be commenced in the circuit court if the amount in controversy exceeds $5,000.

■ "No attorney's fees may be awarded as damages or costs unless so provided by statute, stipulation, or agreement." *Food Pantry v. Waikiki Business Plaza, Inc.*, 58 Haw. 606, 618, 575 P.2d 869, 878 (1978).

HRS § 607-9 (1993) states as follows:

No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.

All actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs. In determining whether and what costs should be taxed, the court may consider the equities of the situation.

HRCP Rule 54(d)(1) (2003), which prior to July 1, 2000, was HRCP Rule 54(d), states, in relevant part, as follows: "Except when express provision therefor is made either in a statute or these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]"

HAR Rule 25 (2003) states, in relevant part, as follows:

(A) The "Prevailing Party" in a trial de novo is the party who (1) appealed and improved upon the arbitration award by 30% or more, . . . .

(B) The "Prevailing Party" under these rules, as defined above, is deemed the prevailing party under any statute or rule of

court. As such, the prevailing party is entitled to costs of trial and all other remedies as provided by law, unless the Court otherwise directs.

■ Although HRS §§ 604–5 and 607–9, HRCP Rule 54(d)(1), and HAR Rule 25 each allow the court some discretion over the allowance of costs, the court's discretion has limitations.

Under Rule 54(d), the trial court has considerable discretion over the allowance of costs. *See Harkins v. Ikeda*, 57 Haw. 378, 557 P.2d 788 (1976); *Dade v. Kuhta*, 3 Haw.App. 89, 641 P.2d 989 (1982) (citing *Turner v. Willis*, 59 Haw. 319, 582 P.2d 710 (1978)). "However, the denial of costs to the prevailing party is in the nature of a penalty for some fault on his part in the course of litigation." *Bishop Trust Co., Ltd. v. Central Union Church*, 3 Haw.App. 624, 656 P.2d 1353 (1983). *See also Abreu v. Raymond*, 56 Haw. 613, 546 P.2d 1013 (1976).

*Wohlschlegel v. Uhlmann–Kihei, Inc.*, 4 Haw.App. 123, 139, 662 P.2d 505, 515–16 (1983).

■ HRCP Rule 68 (2003) states, in relevant part, as follows:

At any time more than 10 days before the trial begins, any party may serve upon any adverse party an offer of settlement or an offer to allow judgment to be taken against either party for the money ... specified in the offer, with costs then accrued.... An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

HRCP Rule 68 does not allow the court any discretion over the allowance of costs incurred after the offer of judgment is made.

## DISCUSSION

■ In this context, the word "costs" does not include unreasonable costs or costs unreasonably incurred. *See Canalez v. Bob's Appliance Serv. Ctr.*, 89 Hawai'i 292, 306, 972 P.2d 295, 309 (1999). The questions whether a cost was unreasonable or unreasonably incurred are questions of law.

■ The trial court's decision pursuant to the above statutes and rules whether to order one party to pay or reimburse another party's costs will not be disturbed absent an abuse of its discretion. *Eastman v. McGowan*, 86 Hawai'i 21, 27, 946 P.2d 1317, 1323 (1997). An abuse of discretion occurs where the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26 *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992); *State ex rel. Bronster v. United States Steel Corp.*, 82 Hawai'i 32, 54, 919 P.2d 294, 316 (1996).

Ngo contends that because he was the prevailing party, the denial of his request for reimbursement of costs was an abuse of discretion and should be reversed.

During the hearing on the motion for taxation of costs, the attorney for Ferrer argued, in relevant part, as follows:

But as to the public policy questions that got addressed, there are really two of those; one, is the question of whether this case should have gotten here at all; and, two, is whether Allstate having driven this case to this point should be the beneficiary of the recovery.

As counsel implied, Mr. Ngo doesn't have a dog in this fight. Mr. Ngo has not paid anything. Mr. Ngo has premiums paid, but those have nothing to do with this litigation. Everybody pays premiums, that doesn't mean that they get involved in the litigation.

This case was brought in the District Court. To remove it from the District Court the defense has to say the case is worth more than $5,000, or that the plaintiff isn't willing to take less than $5,000.

... [I]f there is a demand with the possibility of more than $5,000, the defense has the right to move it to a jury trial. Since the District Court can't do jury trials, the case has ended up in Circuit Court.

And then this giant mushroom of discovery and work begins that would only have been—would have been limited to a little—very simplified process before a judge in District Court. That was what we asked for.

Then forced to Circuit Court against our will we then went to a CAAP [Court Annexed Arbitration Program] arbitration. The arbitrator found an $11,000 award. We offered to settle for less than that arbitration. . . .

Still dissatisfied with that and having followed this pattern throughout Allstate appealed that award. . . .

So the defense—and I hear this all the time—says, oh, well, the reason for this is because we don't want these small cases brought. Allstate doesn't want these small cases brought. But Allstate then is holding the courts hostage to this. And these cases end up getting litigated instead of the cases that the courts really intended to have resolved.

. . . .

The costs in this case were driven up for no purpose. All they had to do was leave it in the District Court or not appeal the arbitration award. All these costs came about because they insisted on taking this case to court and planned to as they made clear from the very beginning.

. . . .

So Allstate saying, gee, we aren't really the party here and they are. They were the party in the first place. They're the ones that didn't pay in the first place. They're the ones that brought this on themselves in the first place. And they shouldn't benefit from litigating cases and forcing cases to trial that should have been settled in an amount that they themselves said it was the most they were willing to offer $3,000. It would have been less than what was available if the case had stayed in District Court.

. . . .

I view that ... what [*Wohlschlegel,* 4 Haw.App. 123, 662 P.2d 505] says is that the Court has the discretion to grant that. But that the Court needs to find that there was some active position, something done

by the defense to drive the costs up. I mean, they didn't have to bring Dr. Carpenter in here and spend $9,000, three times what they offered to settle the case. They didn't have to bring Dr. Sheetz in here and pay him 5,000 or $6,000. None of that was necessary. It was—it was an unnecessary expense to spend twice as much money in costs virtually as we offered to settle the case for.

... I think it's fair to assume there's probably $30,000 in attorney's fees spent in this case. Probably $50,000 in a case that could have been settled for one fifth that amount.

Now, we can argue over little theoretical debates, but if form is to have any significance over substance then you can say, well, maybe they had to do this if they wanted to put on this complete trial. But if substance is what matters, none of this should have happened in the first place.

. . . .

It wasn't just some of [the costs] were unnecessary, they were all unnecessary. And the only necessity came about because the defense and Allstate brought the case up to this court. And the reason they're doing it is because—and we can debate this about why they're getting away with it, the reason that they're doing it is because they want to prevent these cases from being brought at all.

■ Stated in plain language, Ferrer contends that he should not be ordered to pay Ngo any costs because: (1) Ngo's insurer, Allstate, not Ngo, actually paid the costs; (2) if Ngo/Allstate settled the case in the district court for $10,000 as they should have, these costs would not have been incurred; (3) Ngo/Allstate unreasonably refused to settle because Allstate wants to prevent these cases from being brought at all; and (4) it was unnecessary to spend almost twice as much in costs as the amount for which Ferrer offered to settle the case.

Judge Luke agreed with reason (1). She ruled that "the Court is going to deny your motion for costs unless you can submit to the Court an affidavit that attest[s] on behalf of Daniel T. Ngo what his actual out-of-pocket

costs were since I construe that he is the individual party defendant who is making the claim." The question is whether she was right or wrong. We conclude that she was wrong.

In this case, pursuant to the Ngo/Allstate insurance policy, Allstate owed Ngo a duty to defend and a duty to cover. Allstate satisfied both duties. The question presented is whether, in a tort case, the payment of the prevailing defendant's costs by the prevailing defendant's insurer pursuant to the insurance policy is a valid reason for the court to decide not to order the losing plaintiff to pay the costs reasonably incurred by the prevailing defendant. The answer is no. The reasons for the precedent of *Olokele Sugar Co.* apply here. A plaintiff retains the right to sue for damages notwithstanding the fact that those damages have been or will be paid by the plaintiff's insurer. When a party's insurer is providing defense and coverage, the party and the insurer are, to the limits of the coverage, one party defending under the name of the insured. The benefits flowing from a party's insurance coverage flow in favor of the insured party, not the adverse party.

Our decision is supported by *Aspen v. Bayless,* 564 So.2d 1081 (Fla.1990), which agreed with the following conclusion of the Florida Fifth District Court of Appeal:

Failure to allow a cost award to a prevailing defendant who is insured, because of the fact of insurance coverage alone, gives the plaintiff, and/or the plaintiff's insurance carrier, an undeserved windfall. Why should a nonprevailing plaintiff be afforded any fortuitous benefit from such circumstances?

*Id.* at 1082–83.

■ Similarly, a losing defendant retains the right to challenge the reasonableness of the prevailing plaintiff's costs notwithstanding the fact that the amount of costs the losing defendant will be ordered to pay to the prevailing plaintiff will be paid by the losing defendant's insurer.

Ferrer's reasons (2) (if Ngo/Allstate settled the case in the district court as they should have, these costs would not have been incurred) and (3) (Ngo/Allstate unreasonably refused to settle because Allstate wants to prevent these cases from being brought at all), also lack merit. In effect, Ferrer argues for a rule that, when a plaintiff and a defendant are insured by the same insurer and the costs the insured defendant predictably will incur in defense exceed the plaintiff's demand, the insured defendant must pay the plaintiff's demand and, if the insured defendant does not do so, the insured defendant will not be allowed to recover costs from the plaintiff when the insured defendant ultimately is the prevailing party.

Ferrer's argument ignores the fact that Ngo/Allstate had a constitutional right[5] to a jury trial, a right to require Ferrer to prove Ferrer's claim, and a right not to pay anything to Ferrer if Ferrer failed to prove his claim. The jury decided that Ferrer did not prove his claim. Ngo/Allstate's victory at the jury trial disproves Ferrer's allegation that Ngo/Allstate should have settled the case in the district court. It also disproves Ferrer's reason (4) (it was unnecessary to spend twice as much in costs as the amount for which Ferrer offered to settle the case). In light of the jury's verdict, the additional costs incurred by Ngo/Allstate were not necessitated by Ngo/Allstate's refusal to settle the case in the district court. They were necessitated by Ferrer's commencement and continuation of a claim he could not prove, and his failure to dismiss that claim.

Our review of the record discloses no fault on Ngo's part in the course of litigation authorizing the court to penalize Ngo when deciding whether to award costs to him.

### FERRER'S POINTS ON APPEAL

#### A.

■ Ferrer contends the court reversibly erred (1) when it dismissed Allstate from the case and (2) when it did not allow evidence of

---

**5.** The Hawai'i State Constitution specifies in Article 1, Section 13, that "[i]n suits at common law where the value in controversy shall exceed five thousand dollars, the right of trial by jury shall be preserved."

Allstate's insurance of Ngo to be admitted for the jury's information.

■ As noted in footnote 3 above, a "first-party" policy provides coverage for *loss or damage* sustained by the *insured* (*e.g.,* life, disability, health, fire, theft, and casualty insurance) whereby the insurer usually promises to pay money to the insured upon the happening of the risk insured against. A "third-party" policy, on the other hand, provides coverage for the insured's *liability to another* (*e.g.,* CGL [comprehensive general liability], directors' and officers' liability, and errors and omissions insurance) wherein the carrier generally assumes a contractual duty to pay judgments recovered against the insured arising from the insured's negligence. *See generally, Garvey v. State Farm Fire & Cas. Co.,* 48 Cal.3d 395, 770 P.2d 704, 257 Cal.Rptr. 292 (1989).

*Sentinel Ins. Co. v. First Ins. Co. of Hawai'i, Ltd.,* 76 Hawai'i 277, 289, 875 P.2d 894, 906 (1994).

The first-party relationship is distinguishable from the third party situation. In third party claims, the absolute control of trial and settlement is in the hands of the insurer. That control gives rise to a fiduciary relationship between the insurer and the insured. In first party claims the insurer is not in a position to expose the insured to a judgment in excess of policy limits through its unreasonable refusal to settle a case nor is the insurer in exclusive control of the defense. Although an insurer must make a good faith attempt to settle claims …, the insurer and insured in a first party relationship have an adversarial relationship, rather than a fiduciary relationship.

*Best Place, Inc. v. Penn America Ins. Co.,* 82 Hawai'i 120, 129, 920 P.2d 334, 343 (1996) (quoting *Spencer v. Aetna Life & Cas. Ins. Co.,* 227 Kan. 914, 611 P.2d 149, 155 (1980)).

Hawai'i Rules of Evidence (HRE) Rule 411 states as follows:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This

rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

In his opening brief, Ferrer stated, in relevant part, as follows:

This is a first- and third-party bad faith case. …

. . . .

… [T]he attorneys for [Ngo and Allstate] … stated, "Though [Ferrer] … expresses his concerns regarding the statute of limitations with respect to prospective underinsured motorist ('UIM') and bad faith claims against Allstate, no such claims have been alleged in [Ferrer's] Complaint. …" The problem is that [Ngo and Allstate] also contend that [Ferrer] cannot file a direct action under *Olokele,* so the defense blows hot and cold.

. . . .

Construed liberally or not, to state that [Ngo] refused to pay for [Ferrer's] damages and to name Allstate as a defendant should have been notice enough for a bad faith cause of action. In a first-party claim, refusal to pay damages is bad faith.

. . . .

… In *Olokele Sugar,* the insurer was the insurer of the defendant, not the plaintiff. Here, the plaintiff is bound by his own insurer to run up the costs of the litigation by Allstate' removel [sic]. As a policyholder, plaintiff has aright [sic] to have the case litigated as cheaply as possible.

. . . .

Furthermore, Allstate had both a first- and third-party relationship with [Ferrer].

… [Ferrer] was willing to settle the case for $10,000. Allstate was unwilling to pay a penny over $3,000 because this was what Allstate called a MIST, which stands for Minor Impact Soft Tissue, case and they wanted to "set an example" for these types of cases. Thus, Allstate had no right to remove the case, since Allstate valued the case at less than $5000.00, the jurisdictional limit of the District Court if either side requests a remand.

... Allstate was the insurer for [Ferrer] and acted against the best interests of [Ferrer] by driving up the costs of [Ferrer's] insurance....

. . . .

In real life, a jury ought to know why the case was brought, when an insurance company is pulling the strings.

... The fact of insurance should have been allowed to be submitted before the jury in order to show the jury who was actually paying for the trial and who was actually in control. Juries do not like to see manini [small] cases like this, and insurance companies ought not be allowed to remove them.

. . . .

... In this case, it was [Allstate], not [Ngo] nor [Ferrer][,] who wished to go to trial....

. . . .

Thus, the insurance issue was pertinent, not as an issue of negligence, but rather to show the jury that Allstate created the litigation. Allstate wanted the costs to litigate to rise so high, almost twice the amount that [Ferrer] was willing to settle for, just to prove a point.... It was only fair and equitable that the truth should have been made known to the jury.

. . . .

... [T]he verdict was determined in favor of [Ngo] in spite of his liability.

. . . .

[Allstate] acted in bad faith by removing this case from the Honolulu District Court. By offering $3,000 to settle, Allstate felt all along that the value of the case was less than $5,000.00, the demand for a jury trial was in bad faith. Allstate should not have been dismissed in this case.

In his reply brief, Ferrer states, in relevant part, as follows:

Over the years, for some reason, trial courts have prevented the fact that insurance is paying the legal freight from being brought before the jury. But why? HRE 411 talks only about insurance being admissible [sic] on the issue of *negligence* or *wrongful* acts, not for who will pay the judgment. This "rule"—preventing mention of insurance for virtually all reasons—has no justification today.

. . . .

It really is a waste of the Circuit Court's time to have these kinds of cases being litigated in Circuit Court.

Ferrer's arguments, including his statement that "Allstate was the insurer for [Ferrer] and acted against the best interests of [Ferrer] by driving up the costs of [Ferrer's] insurance[,]" indicate that Ferrer's claim against Allstate was premised on the Ferrer/Allstate insurance policy, not the Ngo/Allstate insurance policy. It appears that Ferrer contends that Allstate acted in first– and third-party bad faith regarding the Ferrer/Allstate insurance policy when Allstate (a) pursuant to the Ngo/Allstate insurance policy, refused to compensate Ferrer for his alleged damages and (b) demanded a jury trial, thereby causing the case to be moved from the district court to the circuit court, thereby increasing costs and wasting the circuit court's time and resources.

The record shows that Allstate had a duty to defend and cover Ngo pursuant to the Ngo/Allstate insurance policy. Ferrer was the plaintiff. There is no evidence that, under the Ferrer/Allstate insurance policy, Allstate had a duty to defend or cover Ferrer. There was no evidence in the record of a reasonable possibility that Ferrer would have a UIM claim.

Ferrer's suggestions that, when an insurer is the insurer of both parties, (1) the insurer's duty to defend the defendant is less than it would be if the insurer insured only the defendant or (2) the insurer owes a duty to the plaintiff not to incur costs in excess of the plaintiff's demand, have no basis in law.

As noted above, the costs incurred by Ngo/Allstate were not necessitated by Ngo/Allstate's refusal to settle the case in the district court. They were necessitated by Ferrer's commencement and continuation of a claim he could not prove, and his failure to dismiss that claim.

## B.

Ferrer contends that the court reversibly erred when it denied his December 7, 1999 Motion for New Trial. His ground is that the jury verdict was against the weight of the evidence. He states, in relevant part, as follows:

A directed verdict **should be** granted when, after disregarding conflicting evidence, giving plaintiff's evidence all the value to which it is entitled, and indulging every legitimate inference which may be drawn from plaintiff's evidence, it can be said there is no evidence to support a jury verdict in the **defendant's** favor. *Makaneole v. Gampon*, 7 Haw.App. 448[, 776 P.2d 402] (1989)[.]

(Emphases added; other citations omitted.) This is a misquote. The actual quote is as follows:

[A] directed verdict **may be granted only** when after disregarding conflicting evidence, giving to the plaintiff's evidence all the value to which it is **legally** entitled, and indulging every legitimate inference which may be drawn from the evidence in plaintiff's favor, it can be said there is no evidence to support a jury verdict in **his** favor.

*Makaneole*, 7 Haw.App. at 451, 776 P.2d at 405 (quoting *Wakabayashi v. Hertz*, 66 Haw. 265, 271, 660 P.2d 1309, 1313 (1983)) (emphases added). In context, the word "his" in the quote refers to the plaintiff, not the defendant.

The above quote erroneously suggests that directed verdicts may be awarded only in favor of plaintiffs. As noted in *Young v. Price*, 48 Haw. 22, 395 P.2d 365 (1964), a case cited in *Wakabayashi*:

[O]n motions for a directed verdict, the evidence and the inferences which may be fairly drawn from the evidence must be considered in the light most favorable to the party against whom the motion is directed and if the evidence and the inferences viewed in that manner are of such character that reasonable persons in the exercise of fair and impartial judgment may reach different conclusions upon the crucial issue, then the motion should be denied and the issue should be submitted to the jury.

*Id.* at 24, 395 P.2d at 367.

When a directed verdict in favor of the plaintiff is at issue, the question

is whether the evidence is such that, after giving to plaintiffs' evidence all value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in plaintiffs' favor, it can be said that there is no evidence to support a jury verdict in plaintiffs' favor.

*Lang v. Beech Aircraft Corp.*, 4 Haw.App. 237, 244, 663 P.2d 640, 644–45 (1983) (footnote and citation omitted). Therefore, Ferrer's citation of *Makaneole* does not support Ferrer's argument.

■ Moreover, when Ferrer did not cause a transcript of the trial to be made a part of the record on appeal, he failed his burden of establishing that the jury verdict was against the weight of the evidence. Hawai'i Rules of Appellate Procedure (HRAP) Rule 10(b)(3) (2003); HRAP Rule 10(b)(2) (1999); *Hawaiian Trust Co., Ltd. v. Cowan*, 4 Haw.App. 166, 663 P.2d 634 (1983).

## CONCLUSION

Accordingly, we vacate the May 2, 2001 Judgment on Taxation and Assessment of Costs denying Ngo's request for taxation of costs in the sum of $19,485.49 and remand for the award of reasonable costs consistent with this opinion. In all other respects, we affirm the December 11, 2001 Judgment on All Claims and Parties.