**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000478
01-DEC-2022
07:50 AM
Dkt. 112 SO**

NO. CAAP-21-0000478

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
KUMULIPO IWA COYOTE SYLVA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CRIMINAL NO. 2CPC-18-0000240)

**SUMMARY DISPOSITION ORDER**
(By: Leonard, Presiding Judge, Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Kumulipo Iwa Coyote **Sylva** appeals from the "Judgment; Conviction and Sentence" entered by the Circuit Court of the Second Circuit on January 24, 2020.[1] For the reasons explained below, we affirm.

On March 18, 2018, Sylva caused the death of another person. Sylva was indicted for Murder in the Second Degree in violation of Hawaii Revised Statutes (**HRS**) § 707-701.5.[2] He did not deny that he intentionally caused the death of the victim.

---

[1]     The Honorable Richard T. Bissen, Jr. presided.

[2]     When Sylva was indicted, HRS § 707-701.5 (2014) provided, in relevant part:

> (1)   Except as provided in section 707-701 [("Murder in the first degree")], a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.

He asserted the insanity defense to criminal responsibility,[3] and the mitigating defense of extreme mental or emotional disturbance (**EMED**).[4] A jury found Sylva guilty of manslaughter based upon EMED.

In this direct appeal, Sylva contends that the circuit court erred by: (1) sustaining the State's objections and instructing the jury to disregard testimony from Sylva's expert witness; and (2) failing to instruct the jury that if it found Sylva guilty of manslaughter based upon EMED, it must then consider the insanity defense.

**(1)** "Generally, the decision whether to admit expert testimony rests in the discretion of the trial court. To the extent that the trial court's decision is dependant upon interpretation of court rules, such interpretation is a question of law, which this court reviews de novo." Barcai v. Betwee, 98 Hawaiʻi 470, 479, 50 P.3d 946, 955 (2002) (cleaned up).

---

[3]    HRS § 704-400 (2014) provides:

**Physical or mental disease, disorder, or defect excluding penal responsibility.** (1) A person is not responsible, under this Code, for conduct if at the time of the conduct as a result of physical or mental disease, disorder, or defect the person lacks substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform the person's conduct to the requirements of law.

(2)   As used in this chapter, the terms "physical or mental disease, disorder, or defect" do not include an abnormality manifested only by repeated penal or otherwise anti-social conduct.

This defense is sometimes referred to as the "'insanity' defense." State v. Uyesugi, 100 Hawaiʻi 442, 465 n.1, 60 P.3d 843, 866 n.1 (2002) (Acoba, J., concurring).

[4]    HRS § 707-702 (2014) provides, in relevant part:

(2)   In a prosecution for murder . . . in the . . . second degree[] it is an affirmative defense, which reduces the offense to . . . manslaughter, that the defendant was, at the time the defendant caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a reasonable person in the circumstances as the defendant believed them to be[.]

**(a)** At trial, Sylva called psychiatrist Martin **Blinder** to support his insanity defense. Dr. Blinder opined that Sylva was suffering from a mental disorder — "[h]e was psychotic" — when he caused the victim's death. This exchange then took place:

> Q. Is it your opinion that the disorder resulted in a lack of capacity to control conduct under the law or appreciate wrongfulness?
>
> A. That's my opinion.
>
> Q. And could you help us explain why that is your opinion.
>
> A. Let me tell you how I go about making these judgments. ***The first thing that I look at when there's a homicide is whether or not there's a reasonable reason for the defendant to have done what he did.*** I'm not saying a good reason. There's never a good reason to kill someone. But maybe a drug bust -- a drug deal that went bad, guy is supposed to give him drugs, he pays him and doesn't get the money, he takes his life, or he's insulted on a racial basis or something that we wouldn't approve of but we can understand, that there's been a longstanding conflict between the killer and the person that he kills, and it's unforgivable but understandable.
>
> I look for that. If I find that, then it's pretty well the end of my participation. ***So even if he's got a mental illness, I don't care. We've got a rational reason for doing it.*** A doubt -- being paranoid is not therapeutic, but that's irrelevant. I'm done. ***As far as I'm concerned, he does not meet that standard that you just heard.***
>
> ***In the case of Mr. Sylva, there is no rational reason.*** There's a very superficial reason, but the basic reason is he's got a mission, he's got a mission to rid the world of demons, and he was just getting started. This was obviously, in his delusional mind, a dangerous demon, and for some reason, he -- he's been anointed by what he reads in the Bible to take care of this problem.
>
> And that's nutty and it's crazy, and absent for that nutty, crazy thing, he wouldn't have hurt anybody. ***He's not, you know, a bad man who goes around hurting people.*** But when he --
>
> [DEPUTY PROSECUTING ATTORNEY]: Your Honor, I'm sorry, ***I'm going to object to the last phrase*** and ask that it be stricken.
>
> THE COURT: Any objection?
>
> [DEFENSE COUNSEL]: What are the grounds? This is his opinion.

> THE COURT: Well, that's not -- that wasn't the question that was asked.
>
> [DEFENSE COUNSEL]: The question was why he formed that opinion.  I think he was providing --
>
> THE COURT: Approach the bench, then.

(Emphasis added.)

After hearing counsels' arguments at sidebar, the court ruled: "I mean, saying he's not a bad man, ***that's not the issue***. So I'll sustain the objection[.]"  (Emphasis added.)  The circuit court was not wrong to sustain the objection to Dr. Blinder's testimony that Sylva was "not, you know, a bad man who goes around hurting people."  See Hawaii Rules of Evidence Rule 404 ("Character evidence not admissible to prove conduct").

The circuit court then instructed the jury:

> THE COURT: Ladies and gentlemen, I'll ask you to disregard ***the last response made by the witness*** and order that it be stricken.

(Emphasis added.)  Sylva argues that the circuit court instructed the jury to disregard Dr. Blinder's entire answer to the question: "And could you help us explain why that is your opinion[?]"  The argument is without merit.  The State did not object to Sylva's question.  The State objected only after Dr. Blinder stated — after answering the question at length — that Sylva was "not, you know, a bad man who goes around hurting people."  The deputy prosecuting attorney stated (in the jury's presence): "I'm going to object ***to the last phrase*** and ask that ***it*** be stricken."  (Emphasis added.)  The circuit court instructed the jury to disregard "the last response made by the witness[.]"[5] Under these circumstances, no reasonable juror could have understood the circuit court to have instructed them to disregard Dr. Blinder's entire explanation for his opinion.

---

[5]     The State argues that Sylva waived this issue on appeal by failing to object to the circuit court's post-sidebar instruction to the jury.  In light of our resolution of the issue we need not address the State's waiver argument.

**(b)** Immediately thereafter, the following exchange took place during Dr. Blinder's direct examination:

> Q.    Your opinion is based in part on the fact that there is no rational explanation, correct?
>
> A.    Yes.  Based -- to a reasonable degree of medical probability, there does not appear to be a rational basis for his action, and that **but for his psychotic illness, he would not have taken the life of this man**.
>
> [DEPUTY PROSECUTING ATTORNEY]: Your Honor, I'm going to object, move to strike that.  It's speculative.
>
> [DEFENSE COUNSEL]: Your Honor, it is his opinion and he's explaining why.
>
> THE COURT: It's his opinion that he suffers from --
>
> [DEFENSE COUNSEL]:[6] It's the second part.
>
> THE COURT: I know.  I heard.  He's -- it's his opinion that he suffers from a mental disease, and he's giving a conclusion -- or, excuse me, the word opinion about that.  **He's adding on to that at the end of the answer**.  I ordered it stricken earlier.  I'll order it stricken again.
>
>     Ladies and gentlemen, when the Court orders something stricken, you're not to consider it in your deliberations in any way.  I'll give you an instruction on that later.

(Emphasis added.)

Sylva argues that the circuit court struck Dr. Blinder's entire answer: there did not appear to be a rational basis for Sylva's actions, and but for Sylva's psychotic illness he would not have taken the victim's life.  The State contends that only the second part of the answer was stricken. We need not decide which side is correct, or what a reasonable juror could have understood the circuit court's ruling to have been, because any error was harmless.  The jury heard, and was allowed to consider, Dr. Blinder's opinion that criminal responsibility was "utterly lacking in Mr. Sylva's case at the time of the homicide."  The jury heard, and was allowed to consider, Dr. Blinder's explanation for his opinion that Sylva

---

    [6]    The transcript indicates this statement was made by defense counsel, but it appears that it may actually have been the deputy prosecuting attorney explaining the objection.

was psychotic, and why Sylva's running away from the scene and hiding the weapon and his jacket were not inconsistent with a lack of criminal responsibility due to psychosis.  The jury heard, and was allowed to consider, Dr. Blinder's defense of his opinion during vigorous cross-examination by the State.  The one sentence of testimony at issue was cumulative, and striking it — even if erroneous — was harmless.  See Wakabayashi v. Hertz Corp., 66 Haw. 265, 272, 660 P.2d 1309, 1314 (1983) (noting that "where essentially the same evidence is given by other witnesses or other means, the trial court's exclusion of relevant evidence constitutes harmless error") (citation omitted).

**(2)**  Sylva claims instructional error.  He argues:

> In the instant case, the trial court failed to instruct the jury that if they found Sylva guilty of manslaughter based on EMED, they must consider the affirmative defense of physical or mental disease, disorder or defect excluding criminal responsibility.

Sylva concedes that he did not request such a jury instruction, nor did he object to the instructions actually given to the jury.  There is "a presumption that unobjected-to jury instructions are correct[.]"  State v. Nichols, 111 Hawaiʻi 327, 337 n.6, 141 P.3d 974, 984 n.6 (2006); accord State v. Eberly, 107 Hawaiʻi 239, 250, 112 P.3d 725, 736 (2005).

Sylva does not contend that any of the instructions actually given to the jury incorrectly stated the law; rather, Sylva takes issue with the order in which the jury was instructed to decide the issues.  Instruction no. 19 contained the elements of Murder in the Second Degree.  Instruction no. 22 contained the elements of the included offense of Manslaughter.  Instruction no. 25 described the insanity defense; it stated, in relevant part:

> Before you may consider [the insanity] defense, you must first determine whether the prosecution has proven all of the elements of Murder in the Second Degree or the included offense of Manslaughter beyond a reasonable doubt.  If you unanimously find that the prosecution has not proven all of the elements of Murder in the Second Degree or the included

offense of Manslaughter beyond a reasonable doubt, then you must find the defendant not guilty of that offense without considering the [insanity] defense. If you unanimously find that the prosecution has proven all of the elements of Murder in the Second Degree or the included offense of Manslaughter beyond a reasonable doubt, then you must consider the [insanity] defense.

. . . .

If you unanimously find that the defendant has proven both elements of the [insanity] defense by a preponderance of the evidence, then you must find the defendant not guilty of Murder in the Second Degree or the included offense of Manslaughter by reason of [insanity]. ***If you unanimously find that the defendant has not proven both elements of the [insanity] defense by a preponderance of the evidence, then you must then consider the affirmative defense of Extreme Mental or Emotional Disturbance***. (See instruction No. 26)

(Emphasis added.)

Instruction no. 26 stated, in relevant part:

If and only if you unanimously find that all of the material elements of Murder in the Second Degree have been proven by the prosecution beyond a reasonable doubt, or you unanimously find that all of the material elements of the included offense of Manslaughter have been proven by the prosecution beyond a reasonable doubt, and you unanimously find that the defendant has not proven the elements of the affirmative defense of physical or mental disease, disorder or defect excluding criminal responsibility by a preponderance of the evidence, then you must consider the affirmative defense of Extreme Mental or Emotional Disturbance.

In other words, the jury was instructed to decide whether the State proved, beyond a reasonable doubt, that Sylva intentionally or knowingly caused the death of another person (murder), or recklessly caused the death of another person (manslaughter). If the jury found the State did not sustain its burden, it was instructed to find Sylva not guilty; if the State sustained its burden, the jury was instructed to consider whether Sylva proved, by a preponderance of the evidence, the affirmative defense of insanity.[7] If so, the jury was instructed to acquit

---

[7]    See HRS § 701-115(2)(b) (2014) ("If the defense is an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds . . . by a preponderance of the evidence the specified fact or facts which negative penal liability.").

Sylva; if not, the jury was instructed to consider the mitigating defense of manslaughter based upon EMED.[8]

It made sense for the jury to consider the affirmative defense (insanity) before the mitigating defense (EMED); if the jury found Sylva insane, there would be no need to consider whether he was also under the influence of extreme mental or emotional disturbance.  See State v. Miyashiro, 90 Hawaiʻi 489, 499, 500 n.13, 979 P.2d 85, 95, 96 n.13 (App. 1999) (discussing fundamental principles to be followed in instructing the jury in a criminal case); Adviento, 132 Hawaiʻi at 137-38, 319 P.3d at 1145-46.  We conclude there was no instructional error as argued by Sylva.

For the foregoing reasons, the "Judgment; Conviction and Sentence" entered on January 24, 2020, is affirmed.

DATED:  Honolulu, Hawaiʻi, December 1, 2022.

On the briefs:

William H. Jameson, Jr.,
Deputy Public Defender,
State of Hawaiʻi,
for Defendant-Appellant.

Richard B. Rost,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge

---

[8]     See HRS § 707-702(2), supra note 4; State v. Adviento, 132 Hawaiʻi 123, 137-38, 319 P.3d 1131, 1145-46 (2014) ("[A]lthough HRS § 707-702(2) refers to the mental state of a defendant as a defense, it is really a mitigating factor.  Intentionally killing while under the influence of extreme emotional disturbance does not present a true 'defense,' for the punishment is merely reduced through the mechanism of denominating the crime as 'manslaughter' rather than 'murder[.]'") (citation omitted).